**OHIO ASSOCIATION OF INDEPENDENT SCHOOLS, et al., Plaintiffs–Appellants,**

v.

**John GOFF, et al., Defendants–Appellees.**

**No. 96–3116.**

United States Court of Appeals,
Sixth Circuit.

Argued June 14, 1996.

Decided Aug. 9, 1996.

Rehearing and Suggestion
for Rehearing En Banc
Denied Sept. 25, 1996.

Thomas C. Kilcoyne (argued and briefed), Eric H. Kearney, Cohen, Todd, Kite & Stanford, Cincinnati, OH, for Plaintiffs–Appellants.

Christopher M. Culley, John P. Ware (argued and briefed), Sharon A. Jennings, Office of the Attorney General of Ohio, Columbus, OH, for Defendants–Appellees.

Leo J. Athas (briefed), Maragos, Athas, Apostol, Ditore & Kowal, Chicago, IL, for Amici Curiae, National Association of Independent Schools and the Independent Schools of the Central States.

Before: MERRITT, Chief Judge; KEITH and SUHRHEINRICH, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

This case involves a state requirement that nonpublic high schools administer the same proficiency tests as public high schools to students prior to their graduation. Plaintiffs, who include or represent certain private secondary schools in Ohio, appeal the district court's decision upholding Ohio statutes requiring private as well as public schools to administer ninth grade proficiency tests. Plaintiffs sought a declaration against the state and various state officials that the statutes at issue violated the First and Fourteenth Amendments and requested injunctive relief prohibiting their enforcement. We **AFFIRM** the order of the district court and uphold the testing requirement as rationally related to a legitimate state interest.

## I.

In 1987, the Ohio legislature enacted legislation directing the State Board of Education

to establish a statewide program of proficiency testing in Ohio schools. Ohio Rev.Code Ann. § 3301.0710 (Anderson Supp.1995). The tests were to be administered at some point between the fourth and ninth grades and cover five areas: reading, writing, mathematics, science and citizenship.

Pursuant to § 3301.0710, the Board of Education developed proficiency tests to be administered statewide in the ninth grade ("Ninth Grade Proficiency Test" or "NGPT"). In developing the tests, the Board solicited input from both public and private educators between the years 1987 and 1992. Most private school educators, however, chose not to participate in the development of the tests because it was assumed until 1993 that the testing would be optional for private schools.

In 1993, the legislature passed new statutes requiring private schools to participate in the testing program as well. Section 3301.16 mandated that private schools administer the tests as of July 1995 or lose their charters:

> ... [N]o charter shall be granted to a nonpublic school unless ... the school elects to administer the tests prescribed by [§ 3301.0710] beginning July 1, 1995.... The state board shall also revoke the charter of any nonpublic school, that ... does not participate in the testing program prescribed by [§ 3301.0710]....

Ohio Rev.Code Ann. § 3301.16 (Anderson Supp.1995). The tests are first administered in the ninth grade, and each student must pass by the end of the twelfth grade as a prerequisite to receiving a diploma:

> On and after September 15, 1998, no nonpublic school chartered by the state board of education, shall grant any high school diploma to any person unless the person has attained at least the applicable scores designated under [§ 3301.0710] on all the tests required by [§ 3301.0710]....

Ohio Rev.Code Ann. § 3313.612 (Anderson 1994).

Plaintiffs are The Columbus Academy, The Grand River Academy, The Andrews School, and Maumee Valley Country Day School, all private schools in Ohio; Benjamin D. Sommers, a student at Cincinnati Country Day School, and his mother, Marilyn Sawyers Sommers; the Ohio Association of Independent Schools ("OAIS"), an association representing twenty-eight private schools in Ohio; and Douglas W. MacKelcan, chairman of the OAIS and headmaster of The Columbus Academy. On October 18, 1995, plaintiffs brought this action against the governor of Ohio, the Ohio State Board of Education, and various Ohio school officials to enjoin enforcement of §§ 3301.16 and 3313.612. Plaintiffs contended generally that the statutes at issue violated their rights under the First and Fourteenth Amendments to the Constitution.[1] Plaintiffs also sought declaratory relief and state law remedies.

The district court held a five-day bench trial, at which plaintiffs presented extensive testimony regarding the intrusiveness of the Ohio testing scheme and the degree to which it would "direct" the curricula of private schools. On January 30, 1996, the district court denied plaintiffs' requested relief and dismissed the case. Plaintiffs' motion to this court for injunctive relief pending appeal was denied on February 8, 1996. This appeal followed.

## II.

### A. Standing

■ Defendants contend that the OAIS does not have standing to challenge the statutes at issue on behalf of the parents of children attending OAIS schools. Whether a party has standing is a legal question reviewed de novo. *Greater Cincinnati Coalition for the Homeless v. City of Cincinnati*, 56 F.3d 710, 715 (6th Cir.1995). To establish standing, a party must allege actual or threatened injury, a causal connection between that injury and the defendant's conduct, and a likelihood that a court decision in the plaintiff's favor will redress the injury alleged. *Id.* (citing *Northeastern Fla. Chap-*

---

1. Plaintiffs also argued that the statutes at issue violated the Tenth Amendment. This argument was briefly addressed by the district court, which correctly dismissed the claim because the Tenth Amendment "cannot be used as foundation for an action against the State based on individual rights." Plaintiffs have abandoned this claim on appeal.

*ter of Associated Gen. Contractors v. City of Jacksonville,* 508 U.S. 656, 663–64, 113 S.Ct. 2297, 2301–02, 124 L.Ed.2d 586 (1993)). The plaintiff must also be "a proper proponent, and the action a proper vehicle, to vindicate the rights asserted." *Greater Cincinnati,* 56 F.3d at 715 (quoting *Pestrak v. Ohio Elections Comm'n,* 926 F.2d 573, 576 (6th Cir.), *cert. dismissed,* 502 U.S. 1022, 112 S.Ct. 672, 116 L.Ed.2d 763 (1991)).

■ An association has standing to assert the rights of its members if its members would otherwise have standing to sue in their own right, the interests it seeks to protect are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); *Greater Cincinnati,* 56 F.3d at 717.

■ The OAIS member schools clearly have standing in their own right to challenge § 3301.16, the statute which authorizes the revocation of the charters of those schools which fail to meet the testing requirement. That is, the member schools are threatened with actual injury through the loss of their charters.

The OAIS member schools also have standing to assert the constitutional right of parents to direct their children's education. *See Runyon v. McCrary,* 427 U.S. 160, 175 n. 13, 96 S.Ct. 2586, 2597 n. 13, 49 L.Ed.2d 415 (1976) ("It is clear that the schools have standing to assert these arguments on behalf of their patrons"); *Pierce v. Society of the Sisters,* 268 U.S. 510, 535–36, 45 S.Ct. 571, 573–74, 69 L.Ed. 1070 (1925) (holding that private school could assert rights of potential pupils and their parents). *See generally Runyon,* 427 U.S. at 178, 96 S.Ct. at 2598 ("the manner in which [a parent's] child is to be educated" implicates parental interests protected by *Roe v. Wade,* 410 U.S. 113, 152–53, 93 S.Ct. 705, 726–27, 35 L.Ed.2d 147 (1973)). *Accord Parks Sch. of Business, Inc.*

*v. Symington,* 51 F.3d 1480, 1487 (9th Cir. 1995) (holding that school had standing to challenge state's refusal to guarantee certain loans to students); *Rothner v. City of Chicago,* 929 F.2d 297, 301 (7th Cir.1991) (citing *Pierce* favorably, noting that "when the interests of the litigant and the third party are closely related, the courts have viewed quite charitably assertions of third-party standing"). The member schools therefore have standing to challenge § 3303.612 on behalf of parents of students who are threatened with the nonreceipt of diplomas.

Consequently, the OAIS itself, as an organization dedicated exclusively to advancing the interests of the member schools, has associational standing to challenge the statutes at issue. *See Hunt,* 432 U.S. at 343, 97 S.Ct. at 2441.[2]

## B. Validity of Testing Requirement for Private Schools

### 1. *Fourteenth Amendment.*

Plaintiffs assert that § 3301.16 impinges on a parent's Fourteenth Amendment right to direct, by choice of school, the education of his or her child. Plaintiffs further contend that the statute violates a fundamental right, requiring this court to apply strict scrutiny in our review. We consider first the appropriate level of scrutiny.

■ Challenges to legislation implicating a fundamental right are reviewed with strict scrutiny. *Borman's, Inc. v. Michigan Property & Casualty Guar. Ass'n,* 925 F.2d 160, 162 (6th Cir.), *cert. denied,* 502 U.S. 823, 112 S.Ct. 85, 116 L.Ed.2d 58 (1991). If a fundamental right is not at stake, the statute is generally reviewed for a rational basis. *Id.*

■ The Supreme Court has held that parents have a constitutional right to send their children to private schools and a constitutional right to select private schools that offer specialized instruction. *Runyon,* 427 U.S. at 178, 96 S.Ct. at 2598 (citing *Wisconsin v. Yoder,* 406 U.S. 205, 213, 92 S.Ct. 1526,

---

2. The parties do not contest the lower court's finding that neither Sommers nor his mother had standing. Sommers, who was a senior at Cincinnati Country Day at the time the suit was filed,

would never have to take the Ninth Grade Proficiency Test, because the test would be administered only to students entering the ninth grade in 1995 and thereafter.

1532, 32 L.Ed.2d 15 (1972) and *Pierce,* 268 U.S. at 534, 45 S.Ct. at 573). This right is grounded in Fourteenth Amendment liberty interests which include the right to "marry, establish a home and bring up children." *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). The Supreme Court has applied strict scrutiny to such Fourteenth Amendment claims where they are coupled with a challenge based on the Free Exercise Clause of the First Amendment. *Yoder,* 406 U.S. at 233, 92 S.Ct. at 1542. Absent a free exercise challenge, however, the Court has applied rational basis review, noting that parents have no constitutional right to "private school education unfettered by reasonable government regulation." *Runyon,* 427 U.S. at 178, 96 S.Ct. at 2598.

Plaintiffs do not allege violation of the their free exercise rights. Instead, they suggest that strict scrutiny should nonetheless apply where state standards are so intrusive that they effectively eradicate the distinction between private and public education. Plaintiffs cite an Ohio Supreme Court case, *Ohio v. Whisner,* 47 Ohio St.2d 181, 351 N.E.2d 750 (1976), to support their argument. The plaintiffs in *Whisner* challenged the constitutionality of certain minimum standards imposed on both public and private schools by the state. The *Whisner* court held that the standards were invalid because they were

> so pervasive and all-encompassing that total compliance with each and every standard by a non-public school would effectively eradicate the distinction between public and non-public education, and thereby deprive the[ ] appellants of their traditional interest as parents to direct the upbringing and education of their children.

*Id.* 351 N.E.2d at 768. The Ohio court interpreted *Meyer, Pierce,* and *Yoder* to guarantee "the right of a parent to direct the education, *religious or secular,* of his or her children" as a " 'fundamental right' guaranteed by the due process clause of the Fourteenth Amendment." *Id.* 351 N.E.2d at 769 (emphasis added).[3]

Despite the state court's holding in *Whisner,* no federal court has similarly suggested that wholly secular limitations on private school education implicate a fundamental right warranting strict scrutiny. *See, e.g., Herndon v. Chapel Hill–Carrboro City Bd. of Educ.,* 899 F.Supp. 1443, 1451 (M.D.N.C. 1995) ("Because Plaintiffs' objection to the Program arises out of *purely secular concerns,* the right asserted by plaintiff parents in this case is not a 'fundamental' right" (emphasis added)), *aff'd,* 89 F.3d 174, 179–80 (4th Cir.1996).

Even assuming that *Whisner* states a correct proposition, we are not persuaded that the testing required by § 3301.16 effectively eradicates the difference between public and private schools. The district court's factual findings, which we conclude are not clearly erroneous, indicate that the NGPT requirement places minimal limitations on private schools' latitude to operate independently. The tests require several hours per day over a five day period to administer. The state pays the schools an additional fifty dollars per student to administer the tests. The state does not require any specified level of preparation for the tests. Moreover, the material tested is already required to be taught by state minimum standards which plaintiffs do not contest. Under these circumstances, we fail to see how the testing requirement threatens to completely transform private schools into public ones. Thus, a rational basis review, not strict scrutiny, governs our inquiry.

 We now turn to the merits of plaintiffs' argument. To prevail, plaintiffs must show that § 3301.16 is not "rationally related to a legitimate governmental interest." *Lyng v. International Union,* 485 U.S. 360, 370, 108 S.Ct. 1184, 1192, 99 L.Ed.2d 380 (1988); *Muller v. Lujan,* 928 F.2d 207, 209 (6th Cir.1991) (quotation omitted). The state clearly has an interest in ensuring that certain minimum educational standards are met. *See, e.g., Board of Educ. v. Allen,* 392 U.S. 236, 245–46, 88 S.Ct. 1923, 1927, 20 L.Ed.2d 1060 (1968) (state may insist that private

---

**3.** Alternatively, the *Whisner* court held that the standards at issue impinged upon the free exercise right of parents of students attending a pri-

vate religious school. *Ohio v. Whisner,* 47 Ohio St.2d 181, 351 N.E.2d 750, 767 (1976).

schools "provide minimum hours of instruction, employ teachers of specified training, and cover prescribed subjects of instruction"). Plaintiffs must therefore show the absence of a rational relation, by establishing that it is impossible for the state to demonstrate any reasonable basis for its action. *Borman's*, 925 F.2d at 162.

Plaintiffs have failed to satisfy their burden. In light of the state's interest in education, a reasonable basis exists for utilizing a testing requirement to ensure that students from both public and private schools meet certain basic standards. Plaintiffs have not demonstrated that the testing requirement would require such extensive preparation that it would substantially encroach upon plaintiffs' discretion to design their own curricula. We therefore conclude that the secular testing requirement imposed by §§ 3301.16 and 3303.612 [4] does not constitute unreasonable regulation of private education. *See Runyon*, 427 U.S. at 179, 96 S.Ct. at 2598 (noting that state may reasonably regulate all schools, and has the power to "inspect, supervise and examine them, their teachers and pupils ..." (citing *Pierce*, 268 U.S. at 534, 45 S.Ct. at 573)). The district court correctly denied relief to plaintiffs on their Fourteenth Amendment claim.

We acknowledge that in some situations, state-imposed testing requirements could be so intrusive that they could potentially displace private schools' discretion to fashion their own educational programs and focus on subjects deemed to be of particular importance. This is not such a case. Here, the tests require ninth-graders to demonstrate basic proficiency in reading, writing, mathematics, science, and citizenship. The examinations do not address areas vulnerable to more subjective interpretations such as history, sociology, political science, art, or literature, reinforcing our conclusion that the testing requirement is a reasonable regulation of private education.

### 2. *First Amendment.*

■ Plaintiffs also claim that § 3301.16 violates their right to freedom of speech and association guaranteed by the First Amendment. Plaintiffs allege that the testing requirement impermissibly requires them to alter their school calendars and curricula. The district court found that even if OAIS schools choose to alter their curricula in response to the testing requirement, plaintiffs' free speech rights are not violated because the statute does not restrict the teaching of any particular material.

We agree with the district court that plaintiffs' First Amendment claim is without merit. The testing requirement in no way restricts plaintiffs from teaching any particular subjects, nor does it limit the manner in which they may teach the material. Plaintiffs' First Amendment free speech claim cannot survive absent an indication that their speech has been constrained. Cases cited by plaintiffs in support of their argument are distinguishable in that each involved affirmative restrictions on speech. *See, e.g., Sweezy v. New Hampshire*, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957) (overturning contempt conviction of college professor who refused to answer questions submitted by state attorney general regarding the content of the professor's lectures); *Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967) (invalidating statutory scheme authorizing removal of faculty members for seditious utterances). Accordingly, we conclude that the district court did not err in denying relief to plaintiffs pursuant to the First Amendment.

### III.

For the foregoing reasons, the order of the district court denying relief and dismissing the case is **AFFIRMED.**

---

4. Section § 3303.612, which prohibits the issuance of diplomas to students who have not passed the test, acts as another mechanism to enforce the testing requirement. Because we agree with the district court that § 3301.16 is constitutional, § 3303.612 is also valid and we decline to address it in further detail.