NYGAARD, Circuit Judge,
dissenting:
I agree with much of what the majority has said. I part company, however, with its conclusion that grants PPS a hybrid-type of third-party derivative standing. PPS argues that it has standing to litigate, not the interests of its member-psychiatrists, but rather the issues and interests of its member-psychiatrists’ patients' — who are three steps removed from PPS. PPS’s argument has three premises. Its first two premises are exceptions to the stand *295 ing rule: 1) that PPS has associational standing to litigate on behalf of its member-psychiatrists; and, 2) that its member-psychiatrists have third-party standing to litigate on behalf of their patients. Its third premise is that these exceptions can be “stacked” to concoct a new exception to the standing rule. PPS thus concludes that it should have standing to litigate on behalf if its members’ patients.
The first two premises are sound, but I disagree with the majority on the third. PPS cannot piggy-back two discrete exceptions, to swallow up the long-standing rule that litigants must assert their own rights and interests. I cannot find, nor does PPS cite, any authority for stacking or piggybacking these relationships into an attenuated concatenation of exceptions to the standing rule so as to confer standing on PPS. I would hold that PPS cannot seek relief based upon the rights and interests of remote third parties. I must therefore respectfully dissent on this point.
Central to my conclusion is that PPS’s third premise runs afoul of Amato v. Wilentz, 952 F.2d 742 (3d Cir.1991), wherein we discussed the objectives and standards for third-party standing. Although third-party standing typically proves to be a nebulous prudential doctrine, sensitive to the particularities and peculiarities of the relationship between the parties and their claims, we distilled a basic test for third-party standing in Amato. Id. at 748-49. We require that the party seeking standing must first have suffered an injury in fact. If the party seeking standing has suffered an injury in fact, the court must then examine further, considering: a) the intimacy of the relationship between the parties; b) any impediment the party might have to advancing its own rights; and c) the identity of the interests between the parties. Id. at 749.
Applying the Amato standards, the District Court first found that PPS did not itself suffer an injury. No one disputes this fact. I agree with the District Court that because PPS has not even alleged a concrete injury to itself, it cannot satisfy Amato’s most elementary standard. Standing should be denied to PPS on this test alone.
The District Court, however, continued and found that even if PPS had alleged an injury in fact to itself, Amato’s subsequent elements, or balancing tests, would not favor PPS third-party standing for its members’ patients. The District Court found that the “relationship between PPS and the patient subscribers is so attenuated as to weigh against PPS to bring suit on behalf of persons with which it has no direct relationship.” The District Court next found that “there appears to be no impediment to the patients seeking to enforce their legal claims themselves” and the patients face “no affirmative obstacle to sue[].” I agree with the District Court that even had PPS shown an injury-in-fact, the subsequent balancing test would not confer standing on PPS. The argument that psychiatric patients may face some impediment to bringing these claims themselves, because of the stigma attached to mental illness and psychiatric care, is mere speculation, and moreover, this factor is counterbalanced by the remoteness of the relationship between PPS and its members’ patients. The relationship between PPS and the patients is nothing like the doctor/patient intimacy that supports that exception to the standing rule.
Thus the District Court held that PPS should be denied third-party standing for its member’ patients for three distinct reasons: 1) PPS suffered no injury in fact and therefore the Court did not need to entertain the secondary balancing factors set forth in Amato; 2) even if PPS did merit *296 consideration under the balancing test, the balancing test would not weigh in favor of granting standing since PPS’s relationship with its members’ patients is too attenuated; and 3) the patients have no substantial obstacle to bringing their claims independently. I agree with all three reasons, and with the District Court’s conclusion.
PPS argues to us that the District Court “ignored significant case law recognizing derivative third-party standing.” Nonsense. None of the cases PPS cites are directly on point. PPS and its amici cite cases that confer standing to doctors to litigate on behalf of their patients. But this does nothing to advance PPS’ argument on the “stacking” issue presented here. PPS cites both American College of Obstetricians v. Thornburgh, 737 F.2d 283 (3d Cir.1984) and Ohio Association of Independent Schools v. Goff, 92 F.3d 419 (6th Cir.1996), to support the notion that “an association may assert third-party claims that could be brought by its members.” Neither of these cases stand for such a notion.
In Ohio Association, the association, along with several of its member schools, sought standing for parents of children in the schools to challenge the requirement of state formulated testing in private schools. Ohio Association, 92 F.3d at 421. The Court found that the “OAIS member schools also have standing to assert the constitutional right of parents to direct their children’s education.” Id. at 422 (emphasis added). Thus the Court did not find that the association had standing to assert parents’ interests, but that individual schools had standing to do so. Thus the operative distinction between Ohio Association and PPS’ argument is that in Ohio Association both the association and its individual members jointly brought the suit, but here, PPS attempts to bring its claims to court without the participation of any of its members.
American College presents the same problems for PPS. In American College, the challenge was brought by a team of an association, doctors, and medical providers. American College, 737 F.2d at 289. In a footnote the Court stated that the “district court concluded that plaintiff physicians, ACOG, and medical providers all had standing to raise their own interests (or the interests of members) and those of patients and customers in challenging the Act’s constitutionality. We affirm this general conclusion.” Id. at 290 n. 6. As in Ohio Association, the standing questions in American College turned on the doctors actually participating in the suit. The reason is obvious: The doctors provide the standing “bridge” between the association and the patients. All of the support cited in American College demonstrates the need for physicians to participate in the suit to establish standing. Id. (citing City of Akron v. Akron Ctr. for Reprod. Health, 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983) (challenge by abortion clinics and a physician); Planned Parenthood Ass’n v. Ashcroft, 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983) (challenge by Planned Parenthood, two physicians and an abortion clinic); Planned Parenthood v. Danforth, 428 U.S. 52, 62, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976) (challenge by Planned Parenthood and two physicians); Singleton v. Wulff, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (challenge by two physicians)).
Other cases demonstrate this need for a caretaker, such as a parent or advising officer, to be a party to the suit to provide the bridge between the association and the harmed individual. See Fraternal Order of Police v. United States, 152 F.3d 998 (D.C.Cir.1998) (granting standing for an organization whose members included *297 chief law enforcement officers based on the chief law enforcement officer’s standing to advance the equal-protection rights of subordinate officers); Public Citizen v. FTC, 869 F.2d 1541 (D.C.Cir.1989) (organizations had standing to challenge an FTC regulation that exempted certain promotional items from the requirement that advertising for smokeless tobacco products carry health warnings, since the members of the organizations included parents of children who might be injured by the lack of warnings).
In summary, I agree with the manner in which the District Court applied the Amato standard. I am convinced that PPS has neither successfully met (nor circumnavigated, as the case may be) Ama-to’s requirement that PPS must have itself suffered an injury. Hence I respectfully dissent and would affirm the District Court.