

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-6-2002

# PA Psychiatric v. Green Spring Health

Precedential or Non-Precedential:

Docket 0-3403

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"PA Psychiatric v. Green Spring Health" (2002). *2002 Decisions.* Paper 108.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/108

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 6, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3403

PENNSYLVANIA PSYCHIATRIC SOCIETY,
        Appellant

v.

GREEN SPRING HEALTH SERVICES, INC.;
MAGELLAN HEALTH SERVICES, INC.;
HIGHMARK, INC.;
KEYSTONE HEALTH PLAN WEST, INC.;
KEYSTONE HEALTH PLAN CENTRAL, INC.;
KEYSTONE HEALTH PLAN EAST, INC.

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. Civil Action No. 99-cv-00937
(Honorable Gary L. Lancaster)

Argued October 31, 2000

Before: SCIRICA, NYGAARD and BARRY, Circuit Ju dges

(Filed: February 6, 2002)

        PHILIP H. LEBOWITZ, ESQUIRE
          (ARGUED)
        Pepper Hamilton
        3000 Two Logan Square
        18th and Arch Streets
        Philadelphia, Pennsylvania 19103

         Attorney for Appellant

JOHN R. LEATHERS, ESQUIRE
  (ARGUED)
Buchanan Ingersoll
One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, Pennsylvania 15219

 Attorney for Appellees,
Green Spring Health Services, Inc.
and Magellan Health Services, Inc.

GERRI L. SPERLING, ESQUIRE
Springer Bush & Perry
Two Gateway Center, 15th Floor
Pittsburgh, Pennsylvania 15222

 Attorney for Appellees,
Highmark, Inc. and Keystone
Health Plan West, Inc.

CARLETON O. STROUSS, ESQUIRE
Kirkpatrick & Lockhart
Payne-Shoemaker Building
240 North Third Street
Harrisburg, Pennsylvania 17101

 Attorney for Appellee,
Keystone Health Plan Central, Inc.

THOMAS S. BIEMER, ESQUIRE
JOHN J. HIGSON, ESQUIRE
Dilworth Paxson
3200 The Mellon Bank Center
1735 Market Street
Philadelphia, Pennsylvania 19103

 Attorneys for Appellee,
Keystone Health Plan East, Inc.

2

RICHARD D. RASKIN, ESQUIRE
Sidley Austin Brown & Wood
10 South Dearborn Street
Chicago, Illinois 60603

Attorney for Amici Curiae–
Appellant, The American Medical
Association and Pennsylvania
Medical Society

OPINION OF THE COURT

SCIRICA, Circuit Judge.

The Pennsylvania Psychiatric Society sued several managed health care organizations on behalf of its member psychiatrists and their patients. The gravamen of its complaint was that the managed health care organizations impaired the quality of health care provided by psychiatrists to their patients by refusing to authorize necessary psychiatric treatment, excessively burdening the reimbursement process and impeding other vital care.

The principal issue on appeal is whether the Pennsylvania Psychiatric Society has properly pleaded associational and third–party standing. Finding the Society would require significant individual participation to establish its member psychiatrists' claims, the District Court dismissed its complaint for lack of associational standing.[1] The District Court also found the Society's member psychiatrists lacked third–party standing to pursue their patients' claims. As an alternative ground for dismissal, the District Court held the mandatory arbitration provision in the psychiatrists' contracts barred the Society from advancing their members' claims in court.

We believe the District Court's dismissal under Fed. R. Civ. P. 12(b)(6) was premature. For this reason, we will vacate and remand for further proceedings.

_____

1. The District Court adopted the Magistrate Judge's Report and Recommendation in full.

3

I.

The District Court had subject matter jurisdiction under
28 U.S.C. S 1331 because certain claims asserted by the
Pennsylvania Psychiatric Society arose under the Employee
Retirement Income Security Act of 1974 ("ERISA"), 29
U.S.C. SS 1001-1461.2 We have jurisdiction under 28 U.S.C.
S 1291.

_____

2. The case was removed from state court under ERISA's civil
enforcement provision, S 502(a)(1)(b), which preempts state court
jurisdiction for claims by a plan participant "to recover benefits due to
him under the terms of his plan, to enforce his rights under the terms
of the plan, or to clarify his rights to future benefits under the terms
of
the plan." 29 U.S.C. S 1132(a)(1)(B); Metropolitan Life Ins. Co. v.
Taylor,
481 U.S. 58, 66 (1987); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56
(1987).

To discern which claims are preempted, "we embraced a distinction
between claims pertaining to the quality of the medical benefits provided
to a plan participant [that is, not preempted] and claims that the plan
participant was entitled to, but did not receive, a certain quantum of
benefits under his or her plan [that is, preempted]." In re U.S.
Healthcare,
Inc., 193 F.3d 151, 162 (3d Cir. 1999) (citing  Dukes v. U.S. Healthcare,
Inc., 57 F.3d 350, 357-58 (3d Cir. 1995)), cert. denied sub nom., U.S.
Healthcare, Inc. v. Bauman, 530 U.S. 1242 (2000). Explaining this
distinction in the Supreme Court's lexicon, we recently restated our
position that "challenges [to] the administration of or eligibility for
benefits [i.e., quantity] . . . fall[ ] within the scope of S 502(a) and
[are]
completely preempted . . . ." Pryzbowski v. U.S. Healthcare, Inc., 245
F.3d 266, 273 (3d Cir. 2001). To this end, claims against HMO policies
that purportedly delay care "fall within the realm of the administration
of benefits." Id.

On behalf of its members' patients, the Pennsylvania Psychiatric
Society alleges the MCOs implemented policies to discourage or prevent
subscribers from using mental health services. UnderS 502(a), "[r]elief
may take the form of accrued benefits due, a declaratory judgment on
entitlement to benefits, or an injunction against a plan administrator's
improper refusal to pay benefits." Dedeaux , 481 U.S. at 53. In this case,
the relief sought involves the administration of benefits, because it
would
change the quantum of mental health services provided. These
allegations fall within the scope of ERISA's civil enforcement provision,
and, therefore, removal was proper as ERISA completely preempts at
least some of the claims alleged by the Pennsylvania Psychiatric Society
on behalf of its members' patients.

II.

The Pennsylvania Psychiatric Society, a nonprofit corporation representing licensed psychiatrists in Pennsylvania, filed suit on behalf of its member psychiatrists and their patients who subscribe to managed health care plans administered by Green Spring Health Services.

There are several defendants. Green Spring Health Services, Inc. provides a network of psychiatrists as well as administrative services for managed health care plans; Magellan Health Services, Inc. is its corporate parent. Keystone Health Plan West, Inc., Keystone Health Plan Central, Inc., and Keystone Health Plan East, Inc. are health maintenance organizations that contract with Green Spring Health Services to provide mental health and substance abuse services to their subscribers. Highmark, Inc. is the parent company of Keystone Health Plan West (these managed care organizations collectively are referred to as "the MCOs"). Green Spring Health Services, Magellan Health Services and Highmark choose which psychiatrists to credential to provide these services.

Green Spring Health Services administers the psychiatric and substance abuse services for the employee benefit plans provided by the health management organizations. For this purpose, it enters into contracts with psychiatrists (the "Provider Agreement") to form a provider network to service the plans. In particular, the Provider Agreement assures that Green Spring Health Services will not undermine the psychiatrists' responsibility to provide patients with the mental health services they require. For most disputes arising between credentialed psychiatrists and Green Spring Health Services, the Provider Agreement also contains a mandatory arbitration clause that requires exhaustion of internal review procedures before seeking binding arbitration.

Alleging the MCOs unfairly profit at the expense of the psychiatrists and their patients, the Pennsylvania Psychiatric Society asserts several tort and breach of contract claims for impeding necessary psychiatric treatment. The Pennsylvania Psychiatric Society contends

5

the MCOs refused to authorize and provide reimbursement for medically necessary mental health treatment; interfered with patients' care by permitting non-psychiatrists to make psychiatric treatment decisions; violated Provider Agreements by improperly terminating relationships with certain psychiatrists; and breached the contractual duties of good faith and fair dealing by failing to timely pay psychiatrists and by referring patients to inconvenient treatment locations, thereby depriving some patients access to treatment.

On the basis of these allegations, the Pennsylvania Psychiatric Society claims the MCOs tortiously interfered with the psychiatrists' livelihood as well as the psychiatrist-patient relationship. In addition, the Society asserts the MCOs fraudulently misrepresented the quality of care their plans would provide to subscribers and the benefits psychiatrists would receive for providing their services. Finally, on behalf of its members' patients, the Society alleges the MCOs made false representations to their subscribers in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Const. Stat. Ann. S 201-1 et seq. (West 2001).

The complaint sought declaratory relief, injunctive relief, and damages. The Pennsylvania Psychiatric Society does not appeal the dismissal of its damages claims.

The suit commenced in state court but was removed to federal court on grounds that ERISA preempted all or, at least, some of the Society's claims. Recommending dismissal, the Magistrate Judge issued a Report and Recommendation finding the Society lacked standing to assert the claims of its members and their patients. As an alternative ground for dismissal, the Magistrate Judge found the mandatory arbitration clause in the psychiatrists' contracts foreclosed advancing the claims in court. The District Court adopted the Magistrate Judge's Report. The Pennsylvania Psychiatric Society timely appealed.

III.

The Pennsylvania Psychiatric Society's ability to press the claims of its members and their patients initially hinges on

whether it meets the constitutional requirements for associational standing. For its part, the Society seeks only to pursue claims on behalf of its members and their patients; it does not allege direct injury to itself.

Our review of a dismissal under Fed. R. Civ. P. 12(b)(6) for lack of standing is plenary. ACLU–NJ v. Township of Wall, 246 F.3d 258, 261 (3d Cir. 2001); Gen. Instrument Corp. v. Nu–Tek Elecs. & Mfg., Inc., 197 F.3d 83, 86 (3d Cir. 1999). On appeal, we must accept as true all material allegations of the complaint and draw all reasonable inferences in a light most favorable to plaintiff. Maio v. Aetna, Inc., 221 F.3d 472, 481–82 (3d Cir. 2000). " `The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Therefore, we may affirm the district court only if we believe that the association would be entitled to no relief under any set of facts consistent with its allegations. Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 434–35 (3d Cir. 2000); City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 262 n.12 (3d Cir. 1998).

A.

To satisfy the "case or controversy" standing requirement under Article III, S 2 of the United States Constitution, a plaintiff must establish that it has suffered a cognizable injury that is causally related to the alleged conduct of the defendant and is redressable by judicial action. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc. , 528 U.S. 167, 180–81 (2000) (discussing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)); The Pitt News v. Fisher, 215 F.3d 354, 359 (3d Cir. 2000). Associations may satisfy these elements by asserting claims that arise from injuries they directly sustain. See, e.g., Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 299 n.11 (1979). Absent injury to itself, an association may pursue claims solely as a representative of its members. See, e.g., New York State Club Ass'n, Inc. v. City of New York, 487 U.S. 1 (1988); Pub. Interest Research Group of N.J., Inc. v.

7

Magnesium Elektron, Inc., 123 F.3d 111 (3d Cir. 1997). By permitting associational standing, we "recognize[ ] that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Brock, 477 U.S. 274, 290 (1986); see also Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 187 (1951) (Jackson, J., concurring) (noting purpose of joining an association "often is to permit the association . . . to vindicate the interests of all").

The Supreme Court has enunciated a three-prong test for associational standing. An association must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977) (permitting state agency that represented apple industry to challenge North Carolina statute); see also Laidlaw Envtl. Servs., 528 U.S. at 181; Hosp. Council v. City of Pittsburgh, 949 F.2d 83, 86 (3d Cir. 1991). The need for some individual participation, however, does not necessarily bar associational standing under this third criterion. Hospital Council, 949 F.2d at 89-90.

In this case, the MCOs concede the Pennsylvania Psychiatric Society satisfies Hunt's first and second prongs. But echoing defendants' objections, the District Court found the psychiatrists' claims would require a level of individual participation that precludes associational standing. As noted, the Society has not appealed the dismissal of its damages claims. This is noteworthy because damages claims usually require significant individual participation, which fatally undercuts a request for associational standing. On this point, the Supreme Court has explained that

> "[w]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks

8

a declaration, injunction, or some other form of
prospective relief, it can reasonably be supposed that
the remedy, if granted, will inure to the benefit of those
members of the association actually injured. Indeed, in
all cases in which we have expressly recognized
standing in associations to represent their members,
the relief sought has been of this kind."

Hunt, 432 U.S. at 343 (quoting Warth v. Seldin, 422 U.S.
490, 515 (1975)). Because claims for monetary relief
usually require individual participation, courts have held
associations cannot generally raise these claims on behalf
of their members. E.g., Air Transp. Ass'n v. Reno, 80 F.3d
477, 484-85 (D.C. Cir. 1996) (collecting cases); Sanner v.
Bd. of Trade, 62 F.3d 918, 923 (7th Cir. 1995) (same).
Specifically, the Supreme Court has counseled "that an
association's action for damages running solely to its
members would be barred for want of the association's
standing to sue." United Food & Commercial Workers Union
Local 751 v. Brown Group, Inc., 517 U.S. 544, 546 (1996)
(relying on Hunt, 432 U.S. at 343). Had the Society
continued to press its claims for damages on appeal,
dismissal under Rule 12(b)(6) would be entirely appropriate.

The sole associational standing question remains
whether, taking the allegations as true, the Pennsylvania
Psychiatric Society's requests for declaratory and injunctive
relief will require an inappropriate level of individual
participation.3 We first addressed this question in Hospital
Council of Western Pennsylvania v. City of Pittsburgh, where
an association alleged that certain city and counties
threatened to discriminate against nonprofit hospitals on
taxation, zoning, and contract matters if the hospitals

---

3. Individual participation by an association's membership may be
unnecessary when the relief sought is prospective (i.e., an injunction or
declaratory judgment). See Brock, 477 U.S. at 287-88; Ark. Med. Soc'y,
Inc. v. Reynolds, 6 F.3d 519, 528 (8th Cir. 1993); Action Alliance of
Senior
Citizens v. Snider, Civ. A. No. 93-4827, 1994 WL 384990, at *3 (E.D. Pa.
July 18, 1994) ("[P]articipation of individual members is rarely necessary
when injunctive relief rather than individual damages is sought. Hospital
Council, 949 F.2d at 89. This particularly true where . . . a broad based
change in procedure rather than individualized injunctive relief is
sought.").

refused to make voluntary payments in lieu of taxes. 949 F.2d 83. Interpreting Hunt's third prong through the prism of earlier Supreme Court jurisprudence, we rejected the city's argument that some individual participation violated this requirement.4 Id. at 89. Explaining the circumstances on which this conclusion rested, we concluded:

> [T]he claims asserted by the Council would require some participation by some Council members. This case, unlike many prior associational standing cases, does not involve a challenge to a statute, regulation, or ordinance, but instead involves a challenge to alleged practices that would probably have to be proved by evidence regarding the manner in which the defendants treated individual member hospitals. Adjudication of such claims would likely require that member hospitals provide discovery, and trial testimony by officers and employees of member hospitals might be needed as well. Nevertheless, since participation by "each [allegedly] injured party" would not be necessary, we see no ground for denying associational standing.

Id. at 89–90.

The Court of Appeals for the Seventh Circuit subsequently adopted our interpretation of Hunt 's third prong in Retired Chicago Police Association v. City of Chicago, where the Retired Chicago Police Association sued the city to bar implementation of increased health care premiums. 7 F.3d 584 (7th Cir. 1993). In this drawn-out litigation, the Retired Chicago Police Association represented city employees who allegedly had been guaranteed subsidized health coverage. When the city attempted to raise the coverage price because of escalating costs, the employees claimed the city reneged on its promise and sued. Believing the allegations would require individual participation, the district court concluded the association lacked standing. Id. at 600–01. Relying on Hospital Council, the court of appeals reversed and remanded, holding the association could attempt to

_____

4. In its brief, Keystone suggests reasons why individual participation would be required.

10

establish its allegations with limited membership participation.5 Id. at 602-03.

The MCOs argue the medical coverage decisions on psychiatric care and substance abuse services, which form the basis of the organization's allegations, are fact-intensive inquiries. For this reason, they assert the examination of medical care determinations will demand significant individual participation. To buttress this point, defendants note they offer subscribers various health care plans that in turn provide varying benefits. Consequently, they argue, demonstrating any single coverage decision violated their obligations will entail a case-by-case examination of a patient's condition along with the corresponding available benefits. In support, defendants rely on Rent Stabilization Association v. Dinkins, where an association of landowners alleged rent regulations constituted an unconstitutional taking of their property. 5 F.3d 591 (2d Cir. 1993). There, the Court of Appeals for the Second Circuit held that the extensive individual testimony required to adjudicate the claims would violate Hunt. Id. at 596; see also Reid v. Dep't of Commerce, 793 F.2d 277, 279-80 (Fed. Cir. 1986) (holding union lacked standing to assert back pay claims for its members because each claim depended on member's individual circumstances). The court reasoned the claims foreclosed standing because it

> would have to engage in an ad hoc factual inquiry for each landlord who alleges that he has suffered a taking. [The court] would have to determine the landlord's particular return based on a host of individualized financial data, and [the court] would

_____

5. The Court of Appeals for the Seventh Circuit stated:

> We believe that the approach of the Third Circuit is a sound one. We
> can discern no indication in Warth, Hunt , or Brock that the Supreme
> Court intended to limit representational standing to cases in which
> it would not be necessary to take any evidence from individual
> members of an association . . . . Rather, the third prong of Hunt is
> more plausibly read as dealing with situations in which it is
> necessary to establish "individualized proof," 432 U.S. at 344, for
> litigants not before the court in order to support the cause of action.

7 F.3d at 601-02.

11

have to investigate the reasons for any failure to obtain an adequate return, because the Constitution certainly cannot be read to guarantee a profit to an inefficient or incompetent landlord.

Rent Stabilization, 5 F.3d at 596. But the Court of Appeals for the Second Circuit has not rejected associational standing where only limited individual participation by some members would be required. See N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1349 (2d Cir. 1989) (association warranted standing although evidence from some individual members necessary); see also Nat'l Ass'n of Coll. Bookstores, Inc. v. Cambridge Univ. Press, 990 F. Supp. 245, 249-50 (S.D.N.Y. 1997). We agree that conferring associational standing would be improper for claims requiring a fact-intensive-individual inquiry.

The District Court reviewed the Pennsylvania Psychiatric Society's allegations--overly restrictive treatment authorizations; care determinations based on criteria besides medical necessity; creation of improper obstacles to physician credentialing; imposition of overly-burdensome administrative requirements; failure to pay psychiatrists for rendered services; direct interference with psychiatrist-patient relations--and found each assertion would necessitate significant individual participation. If this were true, the organization would not satisfy the associational standing requirements.6

But the Pennsylvania Psychiatric Society maintains the heart of its complaint involves systemic policy violations that will make extensive individual participation unnecessary. In effect, the Society contends the methods the MCOs employ for making decisions--e.g., authorizing or denying mental health services, credentialing physicians, and reimbursement--represent breaches of contract as well as tortious conduct. Therefore, insofar as its allegations concern how the MCOs render these decisions, the Society's complaint "involve[s] [ ] challenge[s] to alleged practices," Hospital Council, 949 F.2d at 89, that may be

_____

6. Likewise, if the Pennsylvania Psychiatric Society continued to press damages claims on behalf of its members, it would not meet the requirements for associational standing. See supra p. 8.

12

established with sample testimony, which may not involve specific, factually intensive, individual medical care determinations. See Virginia Hosp. Ass'n v. Baliles, 868 F.2d 653, 663 (4th Cir. 1989), aff 'd on other grounds sub nom. Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498 (1990).

If the Pennsylvania Psychiatric Society can establish these claims with limited individual participation, it would satisfy the requirements for associational standing. While we question whether the Society can accomplish this, at this stage of the proceedings on a motion to dismiss for lack of standing, we review the sufficiency of the pleadings and "must accept as true all material allegations of the complaint and must construe the complaint in favor of the plaintiff." Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998) (citing Warth, 422 U.S. at 501). For this reason, we believe the Society's suit should not be dismissed before it is given the opportunity to establish the alleged violations without significant individual participation (as noted, if the damages claims remained, we would affirm the dismissal under Fed. R. Civ. P. 12(b)(6)). Moreover, as the organization concedes, if it cannot adequately demonstrate the MCOs' breaches with limited individual participation, its suit should be dismissed. Because this appeal arises on a motion to dismiss, the Pennsylvania Psychiatric Society should be allowed to move forward with its claims within the boundaries of associational standing. Therefore, we conclude that the District Court erred in dismissing the matter on this basis under Fed. R. Civ. P. 12(b)(6). Nevertheless, the District Court is free to revisit this issue.

B.

In addition to advancing the rights of its member psychiatrists, the Pennsylvania Psychiatric Society seeks to assert the claims of its members' patients who are also allegedly injured by defendants' practices. Because the patients are not members of, or otherwise directly associated with, the Pennsylvania Psychiatric Society, the Society does not have associational standing to assert their claims. Nonetheless, the Society maintains it may bring the

13

patients' claims under the doctrine of third-party standing.7
In particular, the Society contends its member psychiatrists
have third-party standing to assert the claims of their
patients, and the Society has standing to bring the claims
of its members, including their third-party claims.
Defendants have challenged both of these steps. Therefore,
we must decide, first, whether the member psychiatrists
have third-party standing to bring the claims of their
patients, and second, whether the Pennsylvania Psychiatric
Society has associational standing to assert these members'
third-party claims.

1.

Apart from the constitutional requirements for standing,8
courts have imposed a set of prudential limitations on the
exercise of federal jurisdiction over third-party claims.
Bennett v. Spear, 520 U.S. 154, 162 (1997) ("[T]he federal
judiciary has also adhered to a set of prudential principles
that bear on the question of standing.") (quotation and
citation omitted); Warth, 422 U.S. at 498; Powell v. Ridge,
189 F.3d 387, 404 (3d Cir. 1999). The restrictions against
third-party standing do not stem from the Article III "case
or controversy" requirement, but rather from prudential
concerns,9 Amato v. Wilentz , 952 F.2d 742, 748 (3d Cir.

_____

7. Third-party standing is also commonly known as jus tertii standing.
City of Chicago v. Morales, 527 U.S. 41, 56 n.22 (1999); The Pitt News,
215 F.3d at 362 n.6; see also Henry Monaghan, Third Party Standing, 84
Colum. L. Rev. 277, 278 n.6 (1984) (explaining jus tertii standing).
8. Under standing doctrine, a plaintiff must satisfy three constitutional
preconditions: (1) a cognizable injury that is (2) causally connected to
the
alleged conduct and is (3) capable of being redressed by a favorable
judicial decision. Lujan, 504 U.S. at 560-61; see also supra pp. 6-7.
9. The Supreme Court has consistently held that standing to assert
third-party rights is a prudential matter:

      [O]ur decisions have settled that limitations on a litigant's
assertion
      of jus tertii are not constitutionally mandated, but rather stem
from
      a salutary "rule of self-restraint" designed to minimize
unwarranted
      intervention into controversies where the applicable constitutional
      questions are ill-defined and speculative.

Craig v. Boren, 429 U.S. 190, 193-95 (1976); see also Brown Group, 517
U.S. at 557; Allen v. Wright, 468 U.S. 737, 751 (1984); Singleton v.
Wulff,
428 U.S. 106, 123-24 (1976) (plurality opinion); Warth 422 U.S. at 499;

Barrows v. Jackson, 346 U.S. 249, 255, 257 (1953).

14

1991), which prevent courts from "deciding questions of broad social import where no individual rights would be vindicated and . . . limit access to the federal courts to those litigants best suited to assert a particular claim." Gladstone, Realtors v. Vill. of Bellwood, 441 U.S. 91, 99–100 (1979); see also Sec'y of State v. Joseph H. Munson Co., 467 U.S. 947, 955 (1984).

It is a well-established tenet of standing that a"litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." Powers v. Ohio, 499 U.S. 400, 410 (1991); see also Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 474–75 (1982); Wheeler v. Travelers Ins. Co., 22 F.3d 534, 538 (3d Cir. 1994). This principle is based on the assumption that "third parties themselves usually will be the best proponents of their own rights," Singleton v. Wulff, 428 U.S. 106, 114 (1976) (plurality opinion), which serves to foster judicial restraint and ensure the clear presentation of issues. See Munson, 467 U.S. at 955.

Yet the prohibition is not invariable and our jurisprudence recognizes third-party standing under certain circumstances.10 Campbell v. Louisiana, 523 U.S. 392, 397–98 (1998); see also Hodel v. Irving, 481 U.S. 704, 711 (1987) (acknowledging general rule that party must assert own interests is "subject to exceptions"). In particular, if a course of conduct "prevents a third-party from entering into a relationship with the litigant (typically a contractual relationship), to which relationship the third party has a

_____

10. For instance, doctors may be able to assert the rights of patients; lawyers may be able to assert the rights of clients; vendors may be able to assert the rights of customers; and candidates for public office may be able to assert the rights of voters. See, e.g. , Caplin & Drysdale, Chartered
v. United States, 491 U.S. 617 (1989) (holding lawyer could bring Sixth Amendment lawsuit on behalf of criminal defendant); Singleton, 428 U.S. 106 (conferring standing on physicians on behalf of patients to challenge a statute that excluded funding for abortions from Medicaid benefits); Craig, 429 U.S. 190 (allowing vendor to challenge statute that prohibited males under age of twenty-one from buying beer); Mancuso v. Taft, 476 F.2d 187 (1st Cir. 1973) (permitting candidate for public office to raise voters' rights).

15

legal entitlement," third-party standing may be appropriate.
United States Dep't of Labor v. Triplett, 494 U.S. 715, 720
(1990); see also Munson, 467 U.S. at 954-58 (fundraiser
had third-party standing to challenge statute limiting fees
charitable organizations could pay because law infringed on
organizations' right to hire fundraiser for a higher fee).

The Supreme Court has found that the principles
animating these prudential concerns are not subverted if
the third party is hindered from asserting its own rights
and shares an identity of interests with the plaintiff. See
Craig, 429 U.S. at 193-94; Singleton, 428 U.S. at 114-15;
Eisenstadt v. Baird, 405 U.S. 438, 443-46 (1972). More
specifically, third-party standing requires the satisfaction of
three preconditions: 1) the plaintiff must suffer injury; 2)
the plaintiff and the third party must have a "close
relationship"; and 3) the third party must face some
obstacles that prevent it from pursuing its own claims.
Campbell, 523 U.S. at 397; Powers, 499 U.S. at 411; The
Pitt News, 215 F.3d at 362. It remains for courts to balance
these factors to determine if third-party standing is
warranted. Amato, 952 F.2d at 750.

a.

Although the Pennsylvania Psychiatric Society itself has
not suffered direct injury, it is uncontested that it properly
pleaded that defendants' policies and procedures have
economically injured its member psychiatrists and
undermined their ability to provide quality health care.
Thus, while the Society does not itself stand in an
appropriate relationship to the patients' claims to directly
assert them, its members may have third-party standing to
do so.11 And because plaintiff seeks to establish standing on

_____

11. The District Court held——and the dissent argues——that the
Pennsylvania Psychiatric Society could not raise these claims because it
did not itself suffer injury. Injury to the Society, however, is not
relevant
to the issue of the psychiatrists' standing to bring the patients' claims.
Because of the Society's posture, that is the initial question to be
resolved. Only after it is determined that the member psychiatrists would
have third-party standing over these claims do we assess whether the
Society can bring its members' third-party claims. It is in the latter
context that injury to appellant itself is a potential requirement, which
we discuss below.

16

the basis of its members' standing to bring these claims, the members are the appropriate focus of inquiry for these purposes.

b.

We next turn to whether the psychiatrists and their patients have a sufficiently "close relationship" which will permit the physicians to effectively advance their patients' claims. To meet this standard, this relationship must permit the psychiatrists to operate " `fully, or very nearly, as effective a proponent' " of their patients' rights as the patients themselves.12 Powers , 499 U.S. at 413 (quoting Singleton, 428 U.S. at 115).

The patients' relationships with their psychiatrists fulfills this requirement. See supra note 12. In Singleton v. Wulff, the Supreme Court granted physicians third-party standing on behalf of their patients to challenge a statute prohibiting Medicaid funding for certain abortions. 428 U.S. 106. Because of the inherent closeness of the doctor-patient relationship, the plurality found the physicians could efficaciously advocate their patients' interests. Id. at 117 (noting "abortion decision is one in which the physician is intimately involved"). The relationship forged between psychiatrists and their patients is equally compelling.

Psychiatrists clearly have the kind of relationship with their patients which lends itself to advancing claims on their behalf. This intimate relationship and the resulting mental health treatment ensures psychiatrists can effectively assert their patients' rights. Because the Pennsylvania Psychiatric Society alleges the MCOs prevent patients from receiving necessary mental health services and psychiatrists from providing them, its member psychiatrists would be well-suited to litigate these claims for both parties, as their interests are clearly aligned. See

_____

12. Courts have generally recognized physicians' authority to pursue the claims of their patients. Am. Coll. of Obstetricians & Gynecologists v. Thornburgh, 737 F.2d 283, 290 & n.6 (3d Cir. 1984) (collecting cases where physicians allowed to assert patients' claims); see also Planned Parenthood v. Farmer, 220 F.3d 127, 147 & n.10 (3d Cir. 2000).

17

Amato, 952 F.2d at 751 (noting doctor-patient relationship provides strong likelihood of effective advocacy by a physician on behalf of his patients). Accordingly, we believe the psychiatrist-patient relationship would satisfy the second criterion for third-party standing.13

c.

Finally, we examine whether the mental health patients face obstacles to pursuing litigation themselves. This criterion does not require an absolute bar from suit, but "some hindrance to the third party's ability to protect his or her own interests," Powers, 499 U.S. at 411. In other words, a party need not face insurmountable hurdles to warrant third-party standing.14Id. at 415 (holding excluded juror's limited incentive to bring discrimination suit satisfied obstacle requirement for criminal defendant to merit third-party standing); Singleton, 428 U.S. at 117 (recognizing lawsuit's invasion of patient's privacy and "imminent mootness" of pregnancy sufficiently impeded patient from bringing suit herself). The District Court found the patients' mental health problems did not significantly hinder them from suing. We disagree.

The stigma associated with receiving mental health services presents a considerable deterrent to litigation. Cf. Parham v. J.R., 442 U.S. 584, 622 (1979) (Stewart, J., concurring) ("There can be no doubt that commitment to a mental institution results in massive curtailment of liberty. In addition to the physical confinement involved, a person's liberty is also substantially affected by the stigma attached to treatment in a mental hospital.") (quotations and

_____

13. The importance of the psychiatrist-patient relationship has been recognized in other settings too. In Jaffee v. Redmond, the Supreme Court upheld the evidentiary privilege for psychotherapist-patient communications. 518 U.S. 1, 10-15 (1996).

14. One treatise insists that "cases do not demand an absolute impossibility of suit in order to fall within the[impediment] exception. At
the other end of the spectrum, a practical disincentive to sue may suffice, although a mere disincentive is less persuasive than a concrete impediment." 15 James Wm. Moore et al., Moore's Federal Practice S 101.51[3][c].

18

citations omitted); Humphreys v. Drug Enforcement Admin., 96 F.3d 658, 662 (3d Cir. 1996) (noting "psychiatric patients suffer a stigma in society") (quotation and citation omitted). For example, the Supreme Court recognized in Singleton that the obstacles confronted by women in opposing an abortion statute were not overwhelming. In fact, the Court acknowledged the suit could have been brought pseudonymously or as a class. Singleton , 428 U.S. at 117. The Court still concluded that a woman's desire to protect her privacy could discourage her from bringing suit and constituted a sufficient impediment. Id. at 117-18. These concerns apply with equal, if not greater, force to mental health patients. See Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 375 (2001) ("There can be little doubt, then, that persons with mental or physical impairments are confronted with prejudice which can stem from indifference or insecurity as well as from malicious ill will.") (Kennedy, J., concurring). Besides the stigmatization that may blunt mental health patients' incentive to pursue litigation, their impaired condition may prevent them from being able to assert their claims. Therefore, we believe the patients' fear of stigmatization, coupled with their potential incapacity to pursue legal remedies, operates as a powerful deterrent to bringing suit.

Because the third-party claims asserted by the Pennsylvania Psychiatric Society do not implicate any constitutional rights of the psychiatrists' patients, the MCOs contend that granting third-party standing is unwarranted. While successful third-party standing claims have involved alleged violations of third parties' constitutional rights, Singleton and its progeny have not stipulated that constitutional claims are a prerequisite.15 It is true that the rule against third-party standing "normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves."

_____

15. Simply raising a third party's constitutional claims will not in and of
itself satisfy the requirements for third-party standing. For instance, a litigant may not assert a third party's Fourth Amendment rights against unreasonable search and seizure to prevent the admission of damaging evidence. E.g., United States v. Payner , 447 U.S. 727 (1980); see also Monaghan, supra note 7, at 305 n.149.

19

Warth, 422 U.S. at 509. Furthermore, the Supreme Court has noted that courts must consider "the relationship of the litigant to the person whose rights are being asserted; the ability of the person to advance his own rights; and the impact of the litigation on third-party interests." Caplin & Drysdale, 491 U.S. at 623 n.3. But the Court has not held that a constitutional claim must also be alleged, see, e.g., Powers, 499 U.S. at 410-11, and absent further guidance, we will not impose this requirement. For these reasons, we hold the Pennsylvania Psychiatric Society's member psychiatrists would have third-party standing to assert the claims of their patients.

2.

The Pennsylvania Psychiatric Society contends it has standing to bring these third-party claims just as it has standing to bring its members' other claims under the doctrine of associational standing. Defendants maintain the patients' claims are too attenuated from the Society to permit derivative standing.

We decline to adopt a per se rule barring such derivative claims. The Supreme Court did not delineate in Hunt which types of claims associations could bring on behalf of their members, but rather simply held that "an association has standing to bring suit on behalf of its members" when the requisite elements are established. Hunt, 432 U.S. at 343.

The limitations on derivative standing, therefore, are to be determined by applying the test for associational standing specified in Hunt. Our holding that the Pennsylvania Psychiatric Society has alleged facts sufficient to establish the third-party standing of its members to bring their patients' claims implies the satisfaction of only the first requirement of the Hunt test--that "its members would otherwise have standing" to bring these claims. A third-party claim must also meet the requirements that "the interests it seeks to protect are germane to the organization's purpose" and that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Id. These factors inform the analysis whether an association stands in the correct

20

relationship to a claim to allow it to assert that claim on behalf of others.

Other courts of appeals have adopted this approach in finding standing in similar cases. In Fraternal Order of Police v. United States, the Court of Appeals for the District of Columbia granted an organization derivative authority to assert the third-party claims of its members. 152 F.3d 998, 1002 (D.C. Cir. 1998) ("[T]he presence of[the chief law enforcement officers] as members gives the Order standing to make these [third-party] claims as well.").16 The Fraternal Order of Police sued to contest the constitutionality of federal legislation that prohibited supplying firearms to police officers convicted of domestic violence. Id. at 1000–01. Because a chief law enforcement officer would be liable for supplying a firearm to a subordinate convicted of domestic violence and because the failure to supply a weapon could also violate the subordinate officer's rights, the court of appeals found the chiefs had third-party standing to advance the claims of their officers. Id. at 1002. Since the chiefs were members of the Fraternal Order of Police, the association had standing to advance the chiefs' claims as well as the claims of their subordinates. Similar to this case, none of the members were themselves party to the suit.17

The Court of Appeals for the Sixth Circuit also granted an organization derivative authority to enjoin the enforcement of a statute requiring private schools to administer proficiency tests in Ohio Association of Independent Schools v. Goff. 92 F.3d 419, 421–22 (6th Cir. 1996). As parties to the litigation, the association's member schools had standing because failure to comply with the statute would

_____

16. The opinion containing the discussion of standing in Fraternal Order of Police was reversed on rehearing. Fraternal Order of Police v. United States, 173 F.3d 898 (D.C. Cir. 1999). In the second opinion, however, the court stated, "The analysis of standing on this issue is unchanged from our prior opinion." Id. at 903.

17. Contrary to the dissent, we believe Fraternal Order of Police supports recognition of the combination of associational standing and third-party standing, since the standing "bridge" in that case--the chief law enforcement officers--were not parties to the litigation.

result in the loss of their school charters. Id. at 422. The private schools also had third-party standing to assert the constitutional right of their students' parents to direct their children's education. Because its member schools could be injured by the statute, the Ohio Association of Independent Schools also had standing to assert their claims. Since its member schools had standing to assert the rights of the parents, the court held the Ohio Association of Independent Schools also had standing to sue on behalf of the parents whose children attended its members' schools. Id. ("The member schools . . . have standing . . . on behalf of parents of students who are threatened with the nonreceipt of diplomas. Consequently, the OAIS itself, as an organization dedicated exclusively to advancing the interests of the member schools, has associational standing to challenge the statutes at issue."). Thus, while some member schools --the intermediate parties--were parties to the dispute, the Sixth Circuit's standing analysis did not rely on that fact. We see a compelling analogy between these cases and the claims before us, and believe the Pennsylvania Psychiatric Society may have standing to assert its members' third-party claims.

The District Court found the Pennsylvania Psychiatric Society lacked derivative authority to pursue the claims of its members' patients because it had not suffered direct injury itself. On this point, defendants contend Goff is inapt because the Court of Appeals for the Sixth Circuit did not require that the association suffer injury in fact. See Amato, 952 F.2d at 749. This criticism is misplaced. It is generally true that third-party standing requires the party who advances the interests of another party to also suffer discrete injury. As noted previously, this prudential requirement sharpens presentation of claims and avoids litigation of general grievances. But when an association, which has not sustained direct injury, obtains standing to pursue the claims of its members, the association may rely on the injuries sustained by its members to satisfy the injury-in-fact requirement. Consequently, once an organization's members establish third-party standing, the prudential concerns are alleviated if the association also has authority to assert its members' claims.

22

It is a well-recognized anomaly of representational standing that the individuals who have sustained the requisite injury to satisfy the constitutional and prudential standing criteria are not in fact responsible for bringing suit. So long as the association's members have or will suffer sufficient injury to merit standing and their members possess standing to represent the interests of third-parties, then associations can advance the third-party claims of their members without suffering injuries themselves. [18] If on remand the Pennsylvania Psychiatric Society warrants associational standing to represent its members, we conclude it also may have derivative authority to raise the claims of its members' patients.[19]

IV.

We now consider the arbitration provision in the Provider Agreement between the MCOs and the psychiatrists. [20] The

_____

18. In Public Citizen v. FTC, the Court of Appeals for the District of Columbia held Public Citizen and other organizations had standing to challenge an FTC regulation exempting certain promotional items from a statutory requirement that all advertisements for smokeless tobacco products carry certain health warnings. 869 F.2d 1541 (D.C. Cir. 1989). The court held the organizations had associational standing to assert the claims of their members. Id. at 1550. Additionally, the court held that members who were also parents had standing to advance claims for their children. The organizations thus had the derivative authority to assert the claims of their members' children as well. Id.

19. Because the District Court held the Pennsylvania Psychiatric Society did not have standing to assert the claims of its members' patients, it found the organization itself did not fall within the "zone of interests" of
the common law fraud or statutory fraud claims asserted on behalf of the psychiatrists' patients. Because we reverse and remand the District Court's judgment on associational and third-party standing, it will have to reconsider this issue.

20. The Provider Agreement provides in part:

    Section 10.1 Resolution of Disputes. In the event that a dispute
    between Green Spring and Provider arises out of or is related to this
    Agreement, the parties to the dispute agree to negotiate in good faith
    to attempt to resolve the dispute. In the event the dispute is not
    resolved within 30 days of the date one party sent written notice of

23

Pennsylvania Psychiatric Society argues that the District
Court erred in holding all its claims were subject to
mandatory arbitration. The Society contends the arbitration
provision should not apply to its member psychiatrists for
several reasons: (1) the arbitration provision is an
unconscionable contract of adhesion; (2) the organization's
broad-based claims are beyond the scope of the arbitration
provision; (3) claims regarding the process of determining
medical necessity fall outside the purview of arbitration and
pursuing these claims through the available internal review
procedures would be futile; and (4) the psychiatrists with
initial credentialing or re-credentialing claims do not have
contracts with the MCOs requiring arbitration.21

_____

     the dispute to the other party, and if any party wishes to pursue the
     dispute, it shall be submitted to binding arbitration in accordance
     with the rules of the American Arbitration Association . . . . If the
     dispute pertains to a matter which is generally administered in
     accordance with Green Spring's procedures involving, for example,
     credentialing or quality assurance, the procedures set forth by
     Green Spring must be fully exhausted by Provider before Provider
     may invoke its right to arbitration under this Section. Provider
     acknowledges that the recommendation and determination of
     whether Health Services are Medically Necessary shall be made in
     accordance with Green Spring's policies and procedures and shall
     not be subject to this Section 10.

The Provider Agreement defines Medically Necessary Health Services as:

     Health Services including professional services and supplies
     rendered by a Provider to identify or treat an illness that has been
     diagnosed or is suspected, and which are: (a) consistent with (i) the
     efficient diagnosis and treatment of a condition; and (ii) standards of
     good medical practice; (b) required for other than convenience; (c)
     the most appropriate supply or level of service; (d) unable to be
     provided in a more cost-effective and efficient manner; and (e)
     unable to be provided at a facility providing a less intensive level of
     care. When applied to inpatient care, the term means: The needed
     care cannot be safely given on other than an inpatient basis.

21. The District Court believed that these claims had all been settled, but
the Pennsylvania Psychiatric Society maintains in its brief that these
claims have not been addressed completely. Keystone also argues the
association should be prohibited from asserting claims on behalf of

psychiatrists that Green Spring Health Services has never credentialed

24

Because it denied the Society associational and third-party standing to advance the claims of its members' patients, the District Court did not did not examine whether the patients' claims would be subject to mandatory arbitration. The District Court only reviewed the effect of the arbitration provision on the credentialed psychiatrists who are Society members. It strikes us that, assuming the Society has standing to assert the claims of each party, the District Court will have to re-examine the scope as well as the effect of the arbitration provision on all the parties involved. Because we find the Pennsylvania Psychiatric Society survives a motion to dismiss for lack of standing, the District Court must sort through, in the first instance, the impact of the psychiatrists' arbitration clause on the alleged claims.

V.

We will reverse and remand the dismissal of the Pennsylvania Psychiatric Society's complaint for lack of standing. Depending on the level of individual participation necessary to demonstrate its claims, the Society may have standing to press the claims of its member psychiatrists and their patients. Of course, we express no opinion as to the merits of any of the claims or defenses.

We will reverse the order of the District Court and remand for proceedings consistent with this opinion.

_____

because their claims are not present in the Pennsylvania Psychiatric Society's Amended Complaint. See Pa. ex. rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988). In addition, defendants contend that the Pennsylvania Psychiatric Society has not asserted a single claim in its complaint on behalf of psychiatrists who have been denied credentialing by defendants. However, several of the allegations in the organization's amended complaint could arguably be read as asserting claims on behalf of this class of psychiatrists. Although the Amended Complaint is somewhat ambiguous, all these claims may be found woven throughout the allegations.

NYGAARD, Circuit Judge, dissenting:

I agree with much of what the majority has said. I part company, however, with its conclusion that grants PPS a hybrid-type of third-party derivative standing. PPS argues that it has standing to litigate, not the interests of its member-psychiatrists, but rather the issues and interests of its member-psychiatrists' patients -- who are three steps removed from PPS. PPS's argument has three premises. Its first two premises are exceptions to the standing rule: 1) that PPS has associational standing to litigate on behalf of its member-psychiatrists; and, 2) that its member-psychiatrists have third-party standing to litigate on behalf of their patients. Its third premise is that these exceptions can be "stacked" to concoct a new exception to the standing rule. PPS thus concludes that it should have standing to litigate on behalf if its members' patients.

The first two premises are sound, but I disagree with the majority on the third. PPS cannot piggy-back two discrete exceptions, to swallow up the long-standing rule that litigants must assert their own rights and interests. I cannot find, nor does PPS cite, any authority for stacking or piggy-backing these relationships into an attenuated concatenation of exceptions to the standing rule so as to confer standing on PPS. I would hold that PPS cannot seek relief based upon the rights and interests of remote third parties. I must therefore respectfully dissent on this point.

Central to my conclusion is that PPS's third premise runs afoul of Amato v. Wilentz, 952 F.2d 742 (3d Cir. 1991), wherein we discussed the objectives and standards for third-party standing. Although third-party standing typically proves to be a nebulous prudential doctrine, sensitive to the particularities and peculiarities of the relationship between the parties and their claims, we distilled a basic test for third-party standing in Amato. Id. at 748-49. We require that the party seeking standing must first have suffered an injury in fact. If the party seeking standing has suffered an injury in fact, the court must then examine further, considering: a) the intimacy of the relationship between the parties; b) any impediment the party might have to advancing its own rights; and c) the identity of the interests between the parties. Id. at 749.

26

Applying the Amato standards, the District Court first found that PPS did not itself suffer an injury. No one disputes this fact. I agree with the District Court that because PPS has not even alleged a concrete injury to itself, it cannot satisfy Amato's most elementary standard. Standing should be denied to PPS on this test alone.

The District Court, however, continued and found that even if PPS had alleged an injury in fact to itself, Amato's subsequent elements, or balancing tests, would not favor PPS third-party standing for its members' patients. The District Court found that the "relationship between PPS and the patient subscribers is so attenuated as to weigh against PPS to bring suit on behalf of persons with which it has no direct relationship." The District Court next found that "there appears to be no impediment to the patients seeking to enforce their legal claims themselves" and the patients face "no affirmative obstacle to sue[ ]." I agree with the District Court that even had PPS shown an injury-in-fact, the subsequent balancing test would not confer standing on PPS. The argument that psychiatric patients may face some impediment to bringing these claims themselves, because of the stigma attached to mental illness and psychiatric care, is mere speculation, and moreover, this factor is counterbalanced by the remoteness of the relationship between PPS and its members' patients. The relationship between PPS and the patients is nothing like the doctor/patient intimacy that supports that exception to the standing rule.

Thus the District Court held that PPS should be denied third-party standing for its member' patients for three distinct reasons: 1) PPS suffered no injury in fact and therefore the Court did not need to entertain the secondary balancing factors set forth in Amato; 2) even if PPS did merit consideration under the balancing test, the balancing test would not weigh in favor of granting standing since PPS's relationship with its members' patients is too attenuated; and 3) the patients have no substantial obstacle to bringing their claims independently. I agree with all three reasons, and with the District Court's conclusion.

PPS argues to us that the District Court "ignored significant case law recognizing derivative third-party

27

standing." Nonsense. None of the cases PPS cites are directly on point. PPS and its amici cite cases that confer standing to doctors to litigate on behalf of their patients. But this does nothing to advance PPS' argument on the "stacking" issue presented here. PPS cites both American College of Obstetricans v. Thornburgh, 737 F.2d 283 (3d Cir. 1983) and Ohio Association of Independent Schools v. Goff, 92 F.3d 419 (6th Cir. 1996), to support the notion that "an association may assert third-party claims that could be brought by its members." Neither of these cases stand for such a notion.

In Ohio Association, the association, along with several of its member schools, sought standing for parents of children in the schools to challenge the requirement of state formulated testing in private schools. Ohio Association, 92 F.3d at 421. The Court found that the "OAIS member schools also have standing to assert the constitutional right of parents to direct their children's education." Id. at 422 (emphasis added). Thus the Court did not find that the association had standing to assert parents' interests, but that individual schools had standing to do so. Thus the operative distinction between Ohio Association and PPS' argument is that in Ohio Association both the association and its individual members jointly brought the suit, but here, PPS attempts to bring its claims to court without the participation of any of its members.

American College presents the same problems for PPS. In American College, the challenge was brought by a team of an association, doctors, and medical providers. American College, 737 F.2d at 289. In a footnote the Court stated that the "district court concluded that plaintiff physicians, ACOG, and medical providers all had standing to raise their own interests (or the interests of members) and those of patients and customers in challenging the Act's constitutionality. We affirm this general conclusion." Id. at 290 n.6. As in Ohio Association, the standing questions in American College turned on the doctors actually participating in the suit. The reason is obvious: The doctors provide the standing "bridge" between the association and the patients. All of the support cited in American College demonstrates the need for physicians to participate in the

suit to establish standing. Id. (citing City of Akron v. Akron Ctr. for Reprod. Health, 462 U.S. 416 (1983) (challenge by abortion clinics and a physician); Planned Parenthood Ass'n v. Ashcroft, 462 U.S. 476 (1983) (challenge by Planned Parenthood, two physicians and an abortion clinic); Planned Parenthood v. Danforth, 428 U.S. 52, 62 (1976) (challenge by Planned Parenthood and two physicians); Singleton v. Wulff, 428 U.S. 106 (1976) (challenge by two physicians)).

Other cases demonstrate this need for a caretaker, such as a parent or advising officer, to be a party to the suit to provide the bridge between the association and the harmed individual. See Fraternal Order of Police v. United States, 152 F.3d 998 (D.C. Cir. 1998) (granting standing for an organization whose members included chief law enforcement officers based on the chief law enforcement officer's standing to advance the equal-protection rights of subordinate officers); Public Citizen v. FTC, 869 F.2d 1541 (D.C. Cir. 1989) (organizations had standing to challenge an FTC regulation that exempted certain promotional items from the requirement that advertising for smokeless tobacco products carry health warnings, since the members of the organizations included parents of children who might be injured by the lack of warnings).

In summary, I agree with the manner in which the District Court applied the Amato standard. I am convinced that PPS has neither successfully met (nor circumnavigated, as the case may be) Amato's requirement that PPS must have itself suffered an injury. Hence I respectfully dissent and would affirm the District Court.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit