

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-25-2007

# PA Family Ins Inc v. Black

Precedential or Non-Precedential: Precedential

Docket No. 05-5259

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"PA Family Ins Inc v. Black" (2007). *2007 Decisions*. Paper 1023.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1023

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-5259

_____

PENNSYLVANIA FAMILY INSTITUTE, INC.;
RONALD COHEN; CHARLES L. STUMP,

Appellants

v.

THOMAS C. BLACK, III, In His Official Capacity
as a member of the Pennsylvania Judicial Conduct Board;
CHARLES A. CLEMENT, In His Official Capacity
as a Member of the Pennsylvania Judicial Conduct Board;
PATRICK JUDGE, In His Official Capacity
as a Member of the Pennsylvania Judicial Conduct Board;
G. CRAIG LORD, In His Official Capacity
as a Member of the Pennsylvania Judicial Conduct Board;
CHARLENE R. MCABEE, In Her Official Capacity
as a Member of the Pennsylvania Judicial Conduct Board.;
JACK A. PANNELLA, In His Official Capacity
as a Member of the Pennsylvania Judicial Conduct Board;
MARK C. SCHULTZ, In His Official Capacity
as a Member of the Pennsylvania Judicial Conduct Board;
THOMAS A. WALLITSCH, In His Official Capacity

as a Member of the Pennsylvania Judicial Conduct Board;
JAMES R. WEAVER, In His Official Capacity
as a Member of the Pennsylvania Judicial Conduct Board;
PAUL J. KILLION, In His Official Capacity
as Chief Disciplinary Counsel of the
Pennsylvania Office of Disciplinary Counsel;
PAUL J. BURGOYNE, In His Official Capacity
as Deputy Chief Disciplinary Counsel of the
Pennsylvania Office of Disciplinary Counsel;
ANTHONY P. SODROSKI, In His Official Capacity
as Disciplinary Counsel in Charge of District I Office
of the Pennsylvania Office of Disciplinary Counsel;
RAYMOND W. WIERCISZEWSKI, In His Official Capacity
as Disciplinary Counsel in Charge of the District II Office
of the Pennsylvania Office of Disciplinary Counsel;
EDWIN W. FRESE, JR., In His Official Capacity
as Disciplinary Counsel in Charge of the District III Office
of the Pennsylvania Office of Disciplinary Counsel;
ANGELEA A. MITAS, In Her Official Capacity
as Disciplinary Counsel in Charge of the District IV Office
of the Pennsylvania Office of Disciplinary Counsel;
CAROLYN W. RUDNITSKY, In Her Official Capacity
as a Member of the Pennsylvania Judicial Conduct Board

2

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civil Action No. 05-cv-2172
(Honorable Sylvia H. Rambo)

Argued December 4, 2006
Before: SCIRICA, *Chief Judge**, and AMBRO, *Circuit Judges*,
and BAYLSON, District Judge****

(Filed: May 25, 2007 )

JAMES BOPP, JR., ESQUIRE (ARGUED)
ANITA Y. WOUDENBERG, ESQUIRE
THOMAS J. MARZEN, ESQUIRE
Bopp, Coleson & Bostrom
One South 6th Street
Terre Haute, Indiana 47807

---

*This appeal was argued before the panel of Judges Rendell, Ambro and Baylson. The quorum was reconstituted to include Chief Judge Scirica after Judge Rendell recused herself in this matter.

**The Honorable Michael M. Baylson, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

LEONARD G. BROWN, III, ESQUIRE
RANDALL L. WENGER, ESQUIRE
Clymer & Musser
408 West Chestnut Street
Lancaster, Pennsylvania 17608
        Attorneys for Appellants

DAVID M. DONALDSON, ESQUIRE  [ARGUED]
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, Pennsylvania 19102
        Attorney for Appellees

---

OPINION OF THE COURT

---

*PER CURIAM*.

At issue in this appeal are the free speech rights of candidates for state judicial office.  Appellant Pennsylvania Family Institute ("PFI") is not itself a candidate, but rather a non-profit organization that seeks to elicit the views of Pennsylvania judicial candidates on legal and political issues so that it can disseminate those views to its members and to the public.  PFI contends that, under the Supreme Court's decision in *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002), various provisions of Pennsylvania's Code of Judicial

4

Conduct ("Canons") and Rules Governing Standards of Conduct of Magisterial District Justices ("Rules") impermissibly chill constitutionally protected speech and thus violate the First Amendment.  PFI challenges the District Court's dismissal of its action for declaratory and injunctive relief against members of the Pennsylvania Judicial Conduct Board and the Pennsylvania Disciplinary Counsel (collectively "Appellees").  The District Court determined that the Canons and Rules have not directly and personally infringed on PFI's First Amendment rights to speak or listen and that, therefore, PFI lacks standing to sue under Article III of the Constitution, and, moreover, that its claims are not ripe.  We will affirm the District Court's order dismissing the case for lack of standing and lack of ripeness.

## I.

PFI describes itself as a "non-profit educational organization that, among many other things, seeks to collect and publish data regarding judicial candidates and their political philosophies and stances on disputed legal and political issues." PFI Br. 4.  In September 2005, PFI mailed to all of the candidates in Pennsylvania's upcoming state judicial elections the "2005 Pennsylvania Family Institute Voters' Guide Questionnaire for Judicial Candidates."  PFI asked the candidates to complete and return the questionnaire in advance of the November 2005 judicial elections so that it could post responses on its website.

In its cover letter introducing the questionnaire, PFI acknowledged the legal constraints that have historically

prevented judicial candidates from speaking on particular legal issues, writing that:

> As a judicial candidate, we understand that you are subject to the Pennsylvania Code of Judicial Conduct. We believe your responses to our Questionnaire are constitutionally protected under *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002), which struck down on First Amendment grounds a Minnesota Judicial Canon that prohibited judicial candidates from "announc[ing] their views on disputed legal or political issues." However, if you remain fearful that you may not answer our Questionnaire under the Code of Judicial Conduct, then you should seek an advisory opinion from [the Pennsylvania Judicial Conduct Board or the Pennsylvania Lawyers' Disciplinary Board.]

Joint Appendix 75 (first alteration in the original).

The three-page questionnaire proceeded to ask seven multiple choice questions, such as "Which of the following former U.S. Presidents best represents your political philosophy?" and "Do you believe that the Pennsylvania Constitution permits display of the Ten Commandments in courtrooms?"[1] JA 77–78. An eighth question asked candidates

---

[1]The three-page questionnaire contained blanks for candidates to note their name, telephone and fax numbers, the

6

position sought and the voting district. The full text of the questions and answer choices is reproduced below. The original questionnaire placed answer choices in bold typeface below each question, followed by the words "(circle one)." The asterisk following "Decline to Answer" refers to a footnote on the bottom of each page, the text of which is reproduced in the text of this opinion:

1. Which of the following former U.S. Presidents best represents your political philosophy?

John F. Kennedy / Jimmy Carter / Ronald Reagan / George Bush (former) / Undecided / Decline to Answer*

2. Which one of the current Justices of the U.S. Supreme Court most reflects your judicial philsophy?

Rehnquist / Stevens / O'Connor / Scalia / Kennedy / Thomas / Souter / Ginsburg / Breyer / Undecided / Decline to Answer*

3. Do you believe that *Roe v. Wade*, 410 U.S. 113 (1973), insofar as it recognizes a "right to privacy" that includes abortion under the United States Constitution, was correctly or incorrectly decided?

Correctly Decided / Incorrectly Decided / Undecided / Decline to Answer*

4. Rate your judicial philosophy on a scale of 1–10 with "living document" approach being a "1" and "strict constitutionalist" or "originalist" being a "10."

1 2 3 4 5 6 7 8 9 10 Decline to Answer*

5. Do you believe that the Pennsylvania Constitution

7

to list organizations in which they were involved. Rather than permitting open-ended responses, PFI's questionnaire required the candidates to select from a group of answers such as, for the first question quoted above:

> John F. Kennedy / Jimmy Carter / Ronald Reagan / George Bush (former) / Undecided / Decline to Answer*

JA 77.

The "Decline to Answer*" option was available for each of the document's seven multiple choice questions and, as indicated, included an asterisk that corresponded to the following footnote:

> * This response indicates that I believe that I am

---

permits display of the Ten Commandments in courtrooms?
Yes / No / Undecided / Decline to Answer*
6. Do you believe that the Pennsylvania Constitution recognizes a right to same-sex marriage?
Yes / No / Undecided / Decline to Answer*
7. Do you believe that the Pennsylvania Constitution permits student-led graduation prayers in public schools?
Yes / No / Undecided / Decline to Answer*
8. Please list the five organizations in which you are most involved as a member, through contributions, and/or through volunteering.
JA 77–78.

8

prohibited from answering this question by Canon 7(B)(1)(c) of the Pennsylvania Canons of Judicial Conduct, which states that judicial candidates may not "make pledges or promises of conduct in office" or "make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court," and that I will have to disqualify myself as a judge in any proceeding concerning this matter on account of Canon 3(C)(1) because my "impartiality might reasonably be questioned" if I answered this question.

JA 77–79.

Although eighteen judicial candidates returned questionnaires, fourteen of them circled "Decline to Answer" for some or all of the questions. Only four candidates responded to all eight questions.[2] In addition to circling "Decline to

---

[2]Although the record does not indicate the precise number of questionnaires PFI sent out, the District Court noted that the 2005 judicial elections featured "over 400 judicial candidates for election or retention to Pennsylvania's appellate courts, courts of common pleas, municipal courts, magisterial district judgeships, and Philadelphia traffic court." JA 3 n.1. Therefore, it seems clear that many, if not most, of the judicial candidates chose not to return the questionnaire.

Answer*," one candidate noted in the margin beside two questions that "personal political philosophy [is] irrelevant" (in response to the question regarding past presidents) and that the issue "could come before the court" (in response to the question regarding the Ten Commandments). JA at 108–09. Finally, two candidates responded with a jointly signed letter explaining that they could not answer any of the questions because they believed that the questionnaire attempted "to identify how a judge would approach and rule upon issues that may come before him/her as a sitting judge." JA 92. However, none of the judicial candidates who sent customized responses mentioned the Canons or Rules, or otherwise indicated specifically that these regulations were the reason why they did not respond.

PFI did not publish any of the responses either on its website or via any other medium. Instead, PFI contacted both the Pennsylvania Judicial Conduct Board and the Ethics Committee of the Pennsylvania Conference of State Trial Judges to ask whether either would deem responses to PFI's questionnaire to violate Canons 7(B)(1)(c) and 3(C)(1). The Board responded that it did not provide advisory opinions, while the Ethics Committee responded that it only provided advisory opinions to those subject to the Code of Judicial Conduct.

On October 24, 2005, PFI, along with two citizens who alleged that they wished to receive information from PFI, filed suit in the District Court against Appellees, seeking declaratory and injunctive relief to prevent Appellees from enforcing provisions of the Canons and Rules against judicial candidates.

10

Specifically, PFI challenged Canon 7B(1)(c) and Rule 15D(3), both of which provide in relevant part that judicial candidates "should not make pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office" (the "pledges or promises clause") or "make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court" (the "commitments clause"). Additionally, PFI challenged Canon 3C(1) and Rule 8A, which require a judge to recuse himself from proceedings in which his "impartiality might reasonably be questioned" (the "recusal clause").[3]

PFI alleges that the Canons and Rules unconstitutionally infringe on the organization's right to receive and publish information it wishes to collect from judicial candidates, irrespective of whether the restrictions directly infringe on the rights of judicial candidates. Counts I and II of PFI's complaint allege that Canon 7B(1)(c) and Rule 15D(3) are vague and overbroad, both facially and as applied to PFI's questionnaire, and therefore violate the First Amendment because they chill the speech of judicial candidates and, consequently, prevent PFI

---

[3]The Board enforces the Canons and Rules against sitting judges while the Pennsylvania Disciplinary Counsel enforces Canon 7 against lawyers running for judicial office. Although the Disciplinary Counsel only has formal responsibility for the enforcement of its own Rules of Professional Conduct, Rule 8.2(b) explicitly incorporates, and makes binding on candidate-lawyers, the entirety of the Code of Judicial Conduct.

11

from receiving and republishing constitutionally protected speech. Count III alleges that Canon 3C(1) and Rule 8A are vague and overbroad as applied to PFI's questionnaire and that they, too, prevent PFI from receiving and republishing information from judicial candidates.

On the same day that it filed its complaint, PFI also moved for a temporary restraining order and a preliminary injunction. The District Court denied PFI's motion for a temporary restraining order but granted a motion by PFI to consolidate the hearing on the preliminary injunction with a trial on the merits.

The District Court held this hearing and trial on November 1, 2005, and on November 7, 2005, ruled that it could not reach the merits of PFI's claim because PFI lacked standing to assert a "right to listen" under the First Amendment due to its failure "to provide any affirmative statements by candidates that would indicate that any of the candidates are willing speakers." *Pa. Family Inst. v. Black*, No. 05-2172, 2005 WL 2931825, at *6 (M.D. Pa. Nov. 4, 2005). Additionally, the District Court ruled that the matter was not ripe because "the factual record [was] insufficient to support Plaintiffs' stated fear [that judicial candidates would be disciplined for responding to PFI's questionnaire]." *Id*. The District Court dismissed PFI's suit "without prejudice." *Id*. at *7.

PFI now appeals the ruling of the District Court. However, before we can reach the merits of PFI's appeal, we must determine whether we have jurisdiction to review the

12

District Court's order dismissing the case "without prejudice." Appellees argue that this did not constitute a final, appealable order within the scope of 28 U.S.C. § 1291 and, therefore, that we lack appellate jurisdiction. They rely primarily on our decision in *Borelli v. City of Reading*, 532 F.2d 950 (3d Cir. 1976) (per curiam), where we said that an "order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action. Only if the plaintiff cannot amend or declares his intention to stand on his complaint does the order become final and appealable." *Id.* at 951–52. Appellees argue that because PFI has neither argued that it cannot amend its complaint nor declared its willingness to "stand on" its complaint, there is no finality.

We reject this argument and exercise jurisdiction. We have noted that Borelli does not apply "where the district court has dismissed based on justiciability and it appears that the plaintiffs could do nothing to cure their complaint." *Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1461 n.6 (3d Cir. 1994); *Cf. Green v. Humphrey Elevator and Truck Co.*, 816 F.2d 877, 878 n. 4 (3d Cir.1987) (dismissal without prejudice does not destroy finality where party cannot cure defect). Here, we are in that precise situation: the District Court dismissed PFI's complaint on grounds of justiciability and now, before us, PFI argues that the District Court erred in finding an Article III defect.

Furthermore, we note that the § 1291 finality requirement

13

should "be given a 'practical rather than a technical construction.'" *Caver v. City of Trenton*, 420 F.3d 243, 261 (3d Cir. 2005) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). If we were to dismiss this case, PFI would merely ask the District Court to dismiss the case *with* prejudice and pursue this appeal all over again. "'Wheels would spin for no practical purpose.'" *Caver*, 420 F.3d at 261 (quoting *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 385 (1978)). We are therefore satisfied that we have jurisdiction over this appeal.[4]

## II.

We write against a backdrop of heightened interest and some degree of controversy—having nothing to do with the

---

[4]We also note that the District Court directed the Clerk of the Court to "close the file," a directive which we have previously held indicates that the "plaintiff had no desire to amend the dismissed complaint." *Garber v. Lego*, 11 F.3d 1197, 1198 n.1 (3d Cir. 1993). Additionally, to better communicate whether a dismissal without prejudice is intended to be a final order, we suggested in *Borelli* that district courts "expressly state . . . that the plaintiff has leave to amend within a specified period of time." *Borelli*, 532 F.2d at 951 n.1. In this case, the District Court made no such statement and, therefore, did not clearly convey its belief that "an amendment [to the complaint] was possible." *Id.* This is but another piece of evidence suggesting that the parties below did not contemplate further amendment to the complaint.

14

concept of "case or controversy"—regarding the recent efforts of interest groups to invalidate state ethical rules restricting judicial candidate speech in the wake of the Supreme Court's ruling in *White*. In that case, Gregory Wersal, a candidate for associate justice of Minnesota's Supreme Court, challenged Canon 5(A)(3)(d)(i) of the Minnesota Code of Judicial Conduct, which prohibited candidates for judicial office from "announc[ing] his or her views on disputed legal or political issues," on the grounds that it impermissibly prevented him from speaking in violation of the First Amendment. The Supreme Court's determination that the provision was unconstitutional has led to litigation in states across the country seeking to invalidate canons similar to the ones found unconstitutional in Minnesota.[5] Although there is no question that the ruling in

---

[5]*White* prompted the Pennsylvania Supreme Court, in its rulemaking capacity, to amend Canon 7B(1)(c) and Rule 15D(3) by replacing the phrase "announce his views on disputed legal or political issues" with the phrase "make statements that commit or appear to commit the candidate with respect to cases, controversies or issues that are likely to come before the court," the language that is now known as the "commitments clause." *Amendment of Rule 15D(3) of the Rules Governing Standards of Conduct of District Judges*, 32 Pa. Bull. 5951 (Dec. 7, 2002) (per curiam); *Amendment of Canon 7B(1)(c) of the Code of Judicial Conduct*, 32 Pa. Bull 5951 (Dec. 7, 2002) (per curiam). However, various district courts have since found that judicial canons in other states, containing language identical to both

*White* does not in any way *compel* judicial candidates to announce their views, it is equally clear that the decision leaves few, if any, legal obstacles in the way of judicial candidates who wish to speak out on disputed legal or political issues. Consequently, *White* has sparked considerable discussion among judges, lawmakers and commentators over how, and whether, this new freedom can coexist with the goal of maintaining a fair, independent, and impartial judiciary. *See, e.g.*, Robert H. Alsdorf, *The Sound of Silence: Thoughts of a Sitting Judge on the Problem of Free Speech and the Judiciary in a Democracy*, 30 Hastings Const. L.Q. 197 (2003); Rachel Paine Caufield, *In the Wake of* White*: How States are Responding to* Republican Party of Minnesota v. White *and How Judicial Elections are Changing*, 38 Akron L. Rev. 625 (2005); Nancy Gertner, *To Speak or Not to Speak: Musings on Judicial Silence*, 32 Hofstra L. Rev. 1147 (2004); David Schultz, Minnesota Republican

Pennsylvania's current "commitments clause" and "pledges and promises clause," also violate the First Amendment, as interpreted by *White*. *See, e.g.*, *Ind. Right to Life, Inc. v. Shepard*, 463 F. Supp. 2d 879 (N.D. Ind. 2006); *Alaska Right to Life Political Action Comm. v. Feldman*, 380 F. Supp. 2d 1080 (D. Alaska 2005); *N.D. Family Alliance, Inc. v. Bader*, 361 F. Supp. 2d 1021 (D.N.D. 2005); *Family Trust Found. of Ky. v. Wolnitzek*, 345 F. Supp. 2d 672 (E.D. Ky. 2004). These district courts have also ruled that recusal clauses identical to the ones found in Pennsylvania's Canon 3C(1) and Rule 8A were constitutionally valid.

16

Party v. White *and the Future of State Judicial Selection*, 69 Alb. L. Rev. 985 (2006).

Recently, however, the debate has focused on the tools used by interest groups to try to elicit the views of judicial candidates, inciting the initiation of lawsuits against authorities positioned to enforce their states' respective canons. In several cases, interest groups like PFI circulated questionnaires, nearly identical to the one employed here, requesting responses from judicial candidates on a host of legal and political issues.[6] *See, e.g., Ind. Right to Life, Inc. v. Shepard*, 463 F. Supp. 2d 879 (N.D. Ind. 2006); *N.D. Family Alliance, Inc. v. Bader*, 361 F. Supp. 2d 1021 (D.N.D. 2005); *Family Trust Found. of Ky. v. Wolnitzek*, 345 F. Supp. 2d 672 (E.D. Ky. 2004). When some candidates declined to respond, the groups filed "right to listen" suits arguing that the state canons were the reason why judicial candidates chose to remain silent.[7] But there are differing views as to why judges are reluctant to answer such questionnaires. *See* Terry Carter, *Loaded Questionnaires?: Judicial Candidates*

------

[6]Although it is unclear whether the plaintiff organization in *Feldman* also used a questionnaire, this seems likely, as the case is otherwise indistinguishable from those that we have mentioned.

[7]James Bopp, Jr., the lawyer representing PFI, is a veteran of these lawsuits, including *White*, and has been at the forefront of a state-by-state campaign challenging restrictions on judicial election speech.

17

*Advised to Be Wary of Answers Inviting Suits Challenging Canons*, 5 No. 36 ABA J. E-Report 3 (2006). On one hand, it may be that, instead of feeling restrained by state judicial canons, some candidates may decline to speak because "'judges and candidates are lawyers who are professionals and have views of the role of a judge . . . and the rule of law depends on their protecting that view.'" *Id.* (quoting Professor Roy Schotland). On the other hand, as counsel for PFI has publicly theorized, it may be that "'what's really going on here is candidates are afraid to answer the questionnaires because of the canons.'" *Id.* (quoting James Bopp, Jr.). Interestingly, the National Center for State Courts recently warned judges that their responses to these questionnaires could give rise to litigation. *Id.*

Whether Pennsylvania's Canons and Rules violate the First Amendment is not before us. Instead, we are called upon to examine PFI's questionnaire—and the judicial candidates' responses to that questionnaire—as part of the threshold issue of whether PFI has standing to challenge the Canons and Rules.

## III.

Article III, § 2 of the Constitution "limits the 'judicial power' to the resolution of 'cases' and 'controversies.'" *McConnell v. FEC*, 540 U.S. 93, 225 (2003). "Concerns of justiciability go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so. We presume that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *Presbytery*, 40 F.3d at 1462

18

(citations and internal quotations omitted).  Appellees argue that no justiciable case or controversy exists here because PFI has neither been injured, nor legitimately threatened with injury, and, therefore, that the organization's suit suffers from defects of standing and ripeness.

Few doctrines of constitutional law have engendered as much discussion, and confusion, as those of standing and ripeness.  *See, e.g., NE Hub Partners, L.P., v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001) (noting multiple ambiguities in the ripeness doctrine); Erwin Chemerinsky, *A Unified Approach to Justiciability*, 22 Conn. L. Rev. 677, 682–83 (1990) (examining the ways in which standing, ripeness, mootness and the political question doctrine have evolved and become intertwined).  Rather than wade too deeply into these debates, we will embrace the simplicity of our previous observation that the "concepts of standing and ripeness require related but distinct inquiries" essential to the question of whether a case is justiciable. *Pic-A-State Pa., Inc. v. Reno*, 76 F.3d 1294, 1298 n.1 (3d Cir. 1996).  "Whereas ripeness is concerned with *when* an action may be brought, standing focuses on *who* may bring a ripe action."  *Id.* (quoting *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 411 n.13 (3d Cir. 1992)).  Therefore, the task before us is to determine, first, whether PFI stands as the appropriate party to bring this action and, if so, whether its claims are fit for adjudication at

19

this time.[8]

## A. Standing

To have standing to sue under Article III, "a plaintiff must satisfy three constitutional preconditions: (1) a cognizable injury that is (2) causally connected to the alleged conduct and is (3) capable of being redressed by a favorable judicial decision." *Pa. Psychiatric Soc'y v. Green Spring Health Servs.*, 280 F.3d 278, 288 n.8 (3d Cir. 2002) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).[9]

Here, PFI alleges a violation of its "right to listen" based on the potential enforcement of the Canons and Rules by Appellees against judicial candidates who, PFI claims, would like to speak openly on legal issues relevant to their candidacy. Of course, the First Amendment refers only to a right to speak and makes no mention of a right "to listen," "to hear," or "to

---

[8]Although "our review of standing and ripeness determinations is plenary," *Presbytery*, 40 F.3d at 1462, we will, as always, review the District Court's factual determinations for clear error, *U.S. v. Loney*, 219 F.3d 281, 288 (3d Cir. 2000).

[9]"Even when this constitutional minimum has been met, judicially created prudential limitations may defeat a party's standing to maintain a suit." *Pitt News v. Fisher*, 215 F.3d 354, 359 (3d Cir. 2000). For the reasons set forth below, we need not determine whether PFI's suit satisfies standing's prudential limitations.

know." Nevertheless, in *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976), the Supreme Court determined that "the protection afforded [by the First Amendment] is to the communication, to its source and to its recipients both." *Id.* at 756. Therefore, where one enjoys a right to speak, others hold a "reciprocal right to receive" that speech, which "may be asserted" in court. *Id.* at 757. A precondition of asserting this "right to receive," however, is the existence of a "willing speaker." *Id.* at 756. In this respect, the Court of Appeals for the Second Circuit put it best when it said that the right to receive speech is "entirely derivative" of the rights of the speaker. *In re Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 608 (2d Cir. 1988).

Therefore, in order to maintain a "right to listen" claim, a plaintiff must clearly establish the existence of a "willing speaker." In the absence of a willing speaker, "an Article III court must dismiss the action for lack of standing." *Competitive Enter. Inst. v. U.S. Dep't of Transp.*, 856 F.2d 1563, 1566 (D.C. Cir. 1988). In our recent opinion in *United States v. Wecht*, we noted that the purpose of the willing speaker requirement is "not to tie the third party's interests to those of the speaker, but to ensure that there is an injury in fact that would be redressed by a favorable decision." *United States v. Wecht*, No. 06-3098, 2007 WL 1086308, at *5 (3d Cir. Apr. 12, 2007). Thus, if there is no infringement claimed by a speaker—that is, someone who is willing to state that his rights were infringed upon, or that his exercise of rights was chilled by, in this case, the Canons or Rules—there can be no violation of the right to listen. In

21

determining standing, the right to listen depends entirely on the infringement on the rights of a willing speaker.

The issue before us is whether PFI has met its burden of identifying a "willing speaker." A precondition to resolving this question, however, is that we determine what makes a speaker a "willing" one for purposes of standing in this case. PFI urges us to find "willing" the fourteen judicial candidates who circled "Decline to Answer*" as a response to one or all of the questionnaire's seven multiple choice questions. PFI argues that, in circling this choice with its accompanying footnote language, the fourteen questionnaire respondents communicated their belief that they were prohibited from speaking by the Canons and Rules, and that they would be subject to disciplinary action for violating them. In rejecting this argument, the District Court stated that "although [circling 'Decline to Answer'] may be sufficient to establish that the candidates believed that the judicial canons prevented them from providing those answers, [the answers] fail to establish that any of the candidates would have provided the answers but for the judicial canons." *Pa. Family Inst.*, 2005 WL 2931825, at \*6. In other words, the District Court determined that a "willing speaker" should be defined as an individual who would be willing to speak but chose not to speak specifically because of the existence of particular regulations.

PFI now argues that the District Court's "but for" test is too stringent and, citing our decision in *Aiello v. City of Wilmington*, 623 F.2d 845, 857 (3d Cir. 1980), that the judicial

22

canons' prohibitions need only play a de minimis role in preventing an otherwise "willing speaker" from speaking.[10] But a plaintiff must prove causation. *See Pa. Psychiatric Soc'y*, 280 F.3d at 288 n.8. There may be other factors present, but to prove there is a "willing speaker," a party must show at least that but for a challenged regulation of speech, a person would have spoken.

Our recent opinion in *Wecht* features a "willing speaker." There, media outlets sought third-party standing to challenge the constitutionality of a local rule in the U.S. District Court for the Western District of Pennsylvania that limited what attorneys could say publicly about ongoing criminal cases. We wrote that

---

[10]Aiello sought to challenge restrictions on his own speech—not that of a third party—to which he was subject because of his employment as a firefighter in Wilmington, Delaware. He challenged those regulations for overbreadth, contending his speech was impermissibly chilled because, already on probation after breaking into a retail store, he was afraid he would be fired if he complained to the Fire Bureau or otherwise spoke freely. But in recognizing that Aiello's own testimony showed his speech was not chilled, we noted that "generalized allegations of chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Aiello*, 623 F.2d at 857 (citing *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972)). Here, PFI does not even offer a potential willing speaker whose allegations of chill could be examined for any specific or objective harm.

23

the "only way a third party challenging a gag order can show that it will receive the information it seeks is by demonstrating that there is a willing speaker." *Wecht*, 2007 WL 1086308, at *5. We noted it was undisputed that Wecht's attorneys were willing to speak about the case in which he was a criminal defendant: Wecht's counsel in fact commented about the case despite the order, and the District Court subsequently issued a protective order barring Wecht from reproducing or disclosing the contents of court records in the case. We held that the willing speaker requirement for standing of a third party was met "as long as the third party can demonstrate that an individual subject to the [restriction on speech] would speak more freely if the [restriction] is lifted or modified."[11] *Id.* at *6.

In *Virginia State Board of Pharmacy*, the Supreme Court noted that a willing speaker's existence was evidenced by a stipulation of facts that read: "In the absence of [the relevant regulation] some pharmacies in Virginia would advertise, publish and promote price information regarding prescription drugs." 425 U.S. at 757 n.14.

As noted, there may be other reasons present, but, reading the Supreme Court's cases together with our own, we hold that in order to show the existence of a willing speaker for the purposes of establishing third party standing, a party must at

---

[11]Nonetheless, we decided the case under our supervisory power, not on constitutional grounds. *United States v. Wecht*, No. 06-3098, 2007 WL 1086308, at *7 (3d Cir. Apr. 12, 2007).

least demonstrate that but for a regulation, a speaker subject to it would be willing to speak.

Here, PFI failed to prove at trial that the Canons and Rules played any actual causal role in candidates' choice to "decline to answer." Furthermore, the circumstances upon which PFI currently seeks standing differ from those in the other post-*White* cases we have mentioned, *Woltnizek* and *Bader* in particular.[12] In both of those cases, organizations similar to PFI circulated questionnaires and, when several candidates declined to respond, sought standing to challenge the relevant state judicial canons by asserting a "right to listen" claim. In each case the district court found that the organization had standing, but only after determining that the judicial candidates sent in affirmative responses that clearly demonstrated that they would not respond because of the relevant canons.

For instance, in *Wolnitzek*, one candidate wrote that "under Cannon [sic] 5 of the Ky. Sup.Ct. Rules (4.300) I cannot answer these questions *although I would like to*." 345 F. Supp. 2d at 682 (alteration in original) (emphasis added). Still another candidate, a sitting judge, indicated that she regretted that she

_____

[12]Although both *Shepard* and *Feldman* deal with factual patterns and legal challenges similar to ones before us here, neither case describes the nature of the responses sent in by the judicial candidates, nor does either case involve any inquiry into the "willing speaker" concept. Therefore, we find neither case to be particularly helpful in resolving this issue.

could not respond and pointed, as the other respondents did, to Kentucky's canons. *Id*. Additionally, several candidates indicated that they could not speak because of oral and written statements made by Kentucky's Judicial Ethics Committee specifically advising judicial candidates that the relevant canons prohibited their speech. *Id*. at 680–81.

Likewise, in *Bader*, the district court again relied on self-generated responses mentioning the restrictions specifically. For instance, one candidate wrote:

> As much as I would like to respond to the questions, the North Dakota Code of Judicial Conduct prevents me from doing so. I am enclosing herewith a copy of Canon 5 that prohibits a judicial candidate from "making statements that commit or appear to commit the candidate with respect to . . . issues that are likely to come before the court." The questions posed in the survey call for such prohibited statements . . . .
>
> . . .
>
> Therefore, I am unable under the Judicial Canons of North Dakota to respond to your survey.

361 F. Supp. 2d at 1028-29.

In neither case did the district court find standing simply because a judicial candidate chose "decline" accompanied by a preformulated footnote, as PFI asks us to do here. In fact, every

26

single response relied upon by the courts in *Wolnitzek* and *Bader* was specifically drafted by the responding judicial candidate. Unlike the organizations in those cases, PFI has not offered one affirmative, self-generated statement from any sitting judge or candidate that cites to or even mentions Pennsylvania's Canons and Rules. Instead, the organization relies on a prepackaged and presupplied footnote that none of the respondents authored, initialed, or even circled. We are not convinced that the footnote necessarily communicates the views of the judicial candidates.

Moreover, even if we were to accept the footnote as an accurate and sufficient reflection of the candidates' views, we are unconvinced that it effectively communicates what PFI would like us to believe it communicates, namely, that there are willing speakers who would not speak but for the Canons and Rules. The District Court interpreted the judicial candidates' selection of "Decline to Answer" and the language of the appended footnote to mean that the candidates were aware that some prohibition existed, rather than to mean that, if the prohibition did not exist, that they would have given their views. The court noted: "it is just as likely as not that the candidates believe that it is more prudent for them to refrain from providing such answers or otherwise hold independent beliefs that are consistent with the goals of the judicial canons." *Pa. Family Inst.*, 2005 WL 2931825, at *6. The District Court did not err, let alone clearly err, in making this finding.

PFI asserted at oral argument that "everyone would

27

agree" that a judge who believes that a canon prohibits certain activity would "certainly" be deterred. We are not convinced. There are other equally plausible reasons why a judge might choose to forgo speech in the course of a campaign for elected office.

First, it hardly needs to be said that those running for public office may wish to avoid committing themselves to positions on controversial issues. As PFI itself points out, judicial candidates might be using the Canons and Rules as a "pretext" to mask other reasons to remain silent. PFI Br. 14. Additionally, as theorized by Professor Schotland, the role of the judge is different from the role of officials who run for office in the historically political branches, and candidates for the judiciary may feel that announcing their views on legal issues would hinder their ability to effectively dispense justice once they are on the bench.[13] Our point is not that these are the only,

[13]Notions about the role of the judge, as well as concern over applying the same speech test for judicial candidates that we use for other candidates permeate the dissenting opinions in *White*. Justice Stevens urged that "the judicial reputation for impartiality and open-mindedness is compromised by electioneering that emphasizes the candidate's personal predilections rather than his qualifications for judicial office." *White*, 536 U.S. at 802 (Stevens, J., dissenting). Justice Ginsburg wrote separately that "promises of conduct in office, however commonplace in races for the political branches, are inconsistent with the judge's obligation to decide cases in

or even the dominant, theories explaining why a judge might not speak, but rather that they are plausible ones that do not turn on the Canons and Rules. In light of the fact that PFI has not put forward any evidence in contravention of these possible explanations, the organization has not persuaded us that the District Court clearly erred in rejecting PFI's assertion that the Canons and Rules are the real reason why the judges did not submit substantive responses. Without such a showing, PFI cannot establish that the questionnaire respondents qualify as willing speakers.

Despite a trial on the merits in which PFI had every opportunity to call witnesses or present other forms of relevant evidence, it has not brought forward one statement by a judicial candidate indicating that he or she was otherwise willing—and yet declined to speak—for any reason connected to the Canons and Rules. PFI now asks this Court to infer the existence of such a statement through the boilerplate language of the questionnaire's footnote. We decline this invitation to conjecture and, therefore, hold that, because PFI has not established the presence of a willing speaker, it lacks standing to sue under Article III.

In addition to arguing for standing on the basis of its "right to listen," PFI also seeks standing on the grounds that the Canons and Rules directly infringe upon its right to speak. PFI

accordance with his or her role." *Id*. at 813 (Ginsburg, J., dissenting) (internal quotations omitted).

argues that it is "chilled in exercising its own right to free speech [since] it fears publishing affirmative candidate responses it received because this might expose responding candidates to discipline under the canons and rules." PFI Br. 27. The District Court found this theory to be "too speculative" and declined to reach its merits. *Pa. Family Inst.*, 2005 WL 2931825, at *6. We agree. That PFI's lawful and constitutionally protected actions might expose to liability other distinct individuals, with whom the organization has no relationship, is too speculative to constitute a cognizable injury necessary for the organization to have standing under Article III. Furthermore, to the extent that PFI argues that exposing candidates to liability will ultimately chill them from speaking and consequently reduce the amount of speech PFI is able to hear, this is merely a reformulation of its "right to listen" claim, for which PFI does not have standing.[14]

## B. Ripeness

We will discuss the issue of ripeness only briefly, as PFI's lack of standing dictates the result in this case. The District Court reasoned that the factual record was "insufficient

---

[14]We note that PFI argued in its brief that it had standing to challenge the Canons and Rules under the third-party standing doctrine of *jus tertii*. *See, e.g.*, *Sec'y of State of Md. v. Jospeh H. Munson, Co.*, 467 U.S. 947 (1984); *Amato v. Wilentz*, 952 F.2d 742 (3d Cir. 1991). PFI's counsel affirmatively withdrew this theory at oral argument and, therefore, it is not before us.

to support Plaintiffs' stated fear" that judicial candidates would be subject to sanctions were they to respond to PFI's questionnaire. *Pa. Family Inst.*, 2005 WL 2931825, at \*6. In reaching this conclusion, the District Court pointed out that, whereas in *Woltnizek* the Kentucky Judicial Conduct Commission and Ethics Committee issued memoranda notifying judicial candidates that it considered Kentucky's restrictions to have survived *White*, PFI was unable to show "any interpretation of the judicial canons by Pennsylvania's courts, the Pennsylvania Judicial Conduct Board, or the Pennsylvania Office of Disciplinary Counsel." *Id.* at \*7. Although it did not expound on the import of this finding, it is clear that the District Court reasoned that, without a similar interpretation in Pennsylvania, PFI could not show that enforcement was sufficiently imminent for the organization's claims to be ripe for adjudication.

PFI's request for injunctive relief against enforcement suffers from a lack of evidence that enforcement here is contemplated, let alone imminent. This could be characterized either as a lack of ripeness, or as a lack of proof of entitlement to injunctive relief. But PFI's request for declaratory relief regarding the constitutionality of the Canons and Rules stands on a different footing. Clearly, "[f]ederal court review is not foreclosed merely because there is a pre-enforcement challenge to a state statute." *Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 148 (3d Cir. 2000). The Canons and Rules continue to exist and appellees have not forsaken their power to enforce them in the future. Those impacted by an allegedly

31

unconstitutional law are "entitled to know what they [may] not do." *Id.* Therefore, had PFI established the existence of a willing speaker, the underlying challenge to the Canons and Rules themselves as having a chilling effect on speech would have been ripe.

## IV.

For these reasons, we will affirm the order of the District Court.

32